UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINALD GHAFFAAR MCFADDEN,

          Plaintiff,

    -v-                                   18-CV-6684 FPG

                                           ORDER

CARL J. KOENIGSMANN, M.D.-DOCCS, et
al.,

          Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff, Reginald Ghaffaar McFadden, is a prisoner confined at the Attica Correctional Facility ("Attica"). He commenced this action under 42 U.S.C. § 1983 alleging, *inter alia*, that he was exposed to second-hand smoke and denied adequate medical care and a nutritional and religious-compliant diet. As a result, he suffered from Coronary Heart Disease ("CHD") and Chronic Obstructive Pulmonary Disease ("COPD"), which Defendants failed to treat adequately. ECF No. 1. Plaintiff also sought permission to proceed *in forma pauperis*. Initially, the Court denied Plaintiff permission to proceed *in forma pauperis* under 28 U.S.C. § 1915(g) because it found Plaintiff had garnered three or more strikes and did not allege that he was imminent danger of serious physical injury. ECF No. 8. Plaintiff appealed that order and the United States Court of Appeals for the Second Circuit vacated the order and remanded this action because it determined that Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury. ECF No. 13.

The Court therefore grants Plaintiff permission to proceed *in forma pauperis* and must now screen the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**LEGAL STANDARD**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

In evaluating the Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

**BACKGROUND**

Plaintiff sues 14 defendants, including both supervisory officials of the New York State Department of Corrections and Community Supervision ("DOCCS"), and medical and correctional staff at Attica. The Complaint, while not a model of clarity, tells the following story.

2

In or around June and July 2018, after first seeking a medical consultation seven months earlier, Plaintiff learned that the cause of his chronic cough was COPD.  He had first showed signs of this in 2011, following a heart attack.  ECF No. 1, ¶¶ 6-7.  Since Plaintiff's incarceration in 1995, Defendants Anthony Annucci, Acting Commissioner, DOCCS, Carl Koenigsmann, Deputy Commissioner and Chief Medical Officer, DOCCS, and Kevin Bruen, Deputy Commissioner and Counsel, DOCCS, "g[a]ve lip-service to New York's "Open In-Door Clean Air Act," which prohibited smoking inside any state governmental buildings, and permitted staff and inmates to smoke within DOCCS's correctional facilities.  This exposure "contributed" to Plaintiff's COPD and CHD.  *Id.*, ¶¶ 8-9.

Defendants Koenigsmann, Luci Wilson, Regional Health Services Administrator, DOCCS, Williams, Attica Medical Director, Deborah Graf, Registered Nurse, Attica, Alice Schunk, Physician Assistant, Attica, Deborah Bunning, Registered Nurse, Attica, V. Hawley, Registered Nurse, Attica and Jane Doe #401, Registered Nurse, Attica, failed to "inform Plaintiff of COPD and their failure, is to deny treatment to stop a progressive, degenerative, incurable lung disease of the disease . . . . ." *Id.*, ¶ 11.[1]  Section 7651.1, Title 9, New York Code of Rules and Regulations, requires that inmates be provided adequate health care, and Plaintiff alleges that Defendants' failure to inform him of COPD violated this non-discretionary duty.

Plaintiff is a "devout" Shia Ithna-Asheri Muslim "who cannot eat non-Halal meats and fish even if blessed by a Jewish Rabbi [because] Shias cannot eat meats and fish killed by non-Muslims."  *Id.*, ¶ 12.  DOCCS's Alternative Diet uses soy, and contains no meat but fish occasionally.  The diet has forced Plaintiff to eat more than the recommended daily allowance of

---

[1] This allegation is confusing. It does not allege, as this Court reads it, that Defendants failed to inform Plaintiff that he had COPD and thus failed to treat it.  It reads that Defendants permitted smoking within correctional facilities and did not inform Plaintiff of the disease of COPD or the potential to develop COPD from second-hand exposure.

soy (25 grams), denied Plaintiff a nutritional diet and contributed to Plaintiff's CHD and high "thyroid disfunctions[,]" including calcium and Vitamin D deficiencies and low HDL ("good cholesterol"). *Id.*, ¶13. In 2011, Defendants knew Plaintiff's thyroid levels had to be checked every three months but a trip to the hospital for this testing was cancelled because there was no transport van. Another appointment was kept on August 31, 2011 but, after driving over 100 miles for the testing, he was denied testing because the wrong date had been scheduled. *Id.*, ¶¶ 14-18.

On April 17, 2018, Defendant Sgt. John Doe and two other officers were to escort Plaintiff to the Erie County Medical Center for a cardiac appointment. Cardiac appointments are required every six months. *Id.*, ¶ 20. Sgt. John Doe refused to comply with a prior grievance finding by the Central Office Review Committee ("CORC") that leg-shackles and hand cuffs were not to be used on Plaintiff when going up and down stairs and inside secure areas. Plaintiff had previously suffered a fractured ankle and wrist injury that caused his legs and hands to swell. If leg-shackles and handcuffs are used during an entire transport, they cut into his ankle and wrist. *Id.*, ¶¶ 21-22. Rather than comply with this CORC decision, Sgt. John Doe told Plaintiff that he could either go to his appointment with leg-shackles and handcuffs for the entire trip or refuse the medical trip. Plaintiff refused the trip and had to walk in full restraints back to the infirmary from the front gate. *Id.*, ¶ 24.

When Plaintiff arrived back at the infirmary, Defendant Jane Doe, Nurse # 401, questioned Plaintiff why he refused to go to his appointment and began to violate his right to confidentiality when she questioned him in front of other inmates and non-medical personnel. She provided Plaintiff an Inmate Medical Treatment Refusal Form and he stated on the Form why he refused to go to the appointment. *Id.*, ¶ 25. Plaintiff followed up with sick-call appointments on April 20 and June 6, but Defendants Bunning and Hawley, Nurses, ignored Plaintiff's wrist injury and

referred him to Defendant Graf, Physician Assistant, "who was obligated to recall refusals per Policy 7.18." *Id.*, ¶ 26. This prompted a grievance related to Plaintiff's pacemaker's five-year battery life. The battery was due for replacement on August 20, 2016. *Id.*

Defendant B. Hembrook, Law Library Supervisor, Attica, and others, with the "tacit approval" of Defendants Bruen, Annucci, Joseph Noeth, Attica Superintendent, and J. Clinton, Deputy Superintendent, Attica,[2] "obstruct[ed]" access to courts by denying Plaintiff notary services and access to the law library to "stop and chill" pending litigation. *Id.*, ¶¶ 27-28.

On February 8, 2018, Defendants J. Spangler, Investigator, and John Doe #1, "acting under the orders " of Defendants J. Moore, Office of Special Investigation, Bruen and Annucci, conducted a cell search and seized all of Plaintiff's legal materials and religious books "in order to stop and chill on-going civil actions about them and others." *Id.*, ¶ 29. On March 5, 2018, Defendant Clinton conducted a Tier III Superintendent's Hearing "commenced" by Moore, presumably following the search of Plaintiff's cell. Clinton denied Plaintiff witnesses, documentary evidence and the right to confront the accusations against him. Following the Hearing, Clinton sentenced Plaintiff to 255 days in the Special Housing Unit ("SHU") and the loss of privileges. *Id.*, ¶ 30.

## DISCUSSION

## A.  PLAINTIFF'S LEGAL CLAIMS

### 1.  Second-Hand Smoking Exposure

Plaintiff alleges that in June or July 2018, "[i]t was discovered for the first time that "medical knew of [COPD]." *Id.*, ¶¶ 6-7. He claims that since his 1995 admission to DOCCS,

---

[2] J. Clinton, Deputy Superintendent, Attica, and J. Spangler, Investigator, are not listed in the Caption or "Parties" section of the Complaint but are both referred to as Defendants in the body of the Complaint. The Clerk of Court is therefore respectfully directed to add these two individuals as Defendants to the Caption of this action.

Defendants Annucci, Koenigsmann and Bruen "as policy makers" failed to prohibit smoking in DOCCS's facilities ("gave lip-service" to New York's Clean Air Act) and exposed non-smokers to second-hand smoke, which contributed to both his COPD and CHD.  *Id.*, ¶¶ 8-9.

"[P]rison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment."  *Davidson v. Desai*, 03-CV-121S, 2019 WL 125999, at *25 (W.D.N.Y. 2019).  "[T]he Eighth Amendment does not categorically protect an inmate from any exposure to second-hand smoke", *Baker v. Moore*, 2016 WL 7493956, *2 (D. Conn. 2016), but "exposure to secondhand smoke can give rise to an Eighth Amendment violation", where "the exposure created an 'unreasonable risk of serious damage' to inmates' future health, and that prison officials were deliberately indifferent to that risk".  *Jones v. Goord*, 435 F. Supp. 2d 221, 249 (S.D.N.Y. 2006) (*quoting Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  Courts examining claims of second-hand smoke exposure (otherwise referred to as environmental tobacco smoke ("ETS")), differentiate between claims of present and future harm caused by exposure.  *Johnson v. Fischer*, 2015 WL 670429, *27 (N.D.N.Y. 2015).

Plaintiff's allegations are generally conclusory, but he alleges he is suffering currently from COPD caused by exposure to second-hand smoke and, therefore, the Court analyzes this claim as one alleging present harm.  These claims, like other Eighth Amendment claims, are analyzed under the "deliberate indifference" standard set out in *Estelle v. Gamble*, 429 U.S. 97 (1976); *Grayson v. Courtney*, 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296, at *8 (N.D.N.Y. 2018).  This standard has both objective and subjective components.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Under the objective component, the alleged medical need or condition must be "sufficiently serious."  *Id.*  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain".  *Id.*  "Factors that have been considered

include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "Mild, non-life threatening respiratory conditions that do not require hospitalization are generally insufficiently serious for Eighth Amendment purposes." *Davidson*, 2019 WL 125999, at *31.

Plaintiff alleges that he suffers from COPD and began experiencing a chronic cough in 2011; facts the Court must assume are true. ECF No. 1, ¶¶ 6, 8-9. He alleges no other past or present symptoms. While the allegations are minimal, the Court finds that, at this stage in the litigation, Plaintiff's COPD diagnosis sufficiently alleges a serious medical need. *See Hobson v. Fischer*, No. 10 Civ. 5512(SAS), 2011 WL 891314, at *5 (S.D.N.Y. Mar. 14, 2011) (COPD found sufficiently serious to support an Eighth Amendment claim at motion to dismiss stage); *Reid v. Goord*, No. 04-CV-00883 (M), 2010 WL 1407988, at *5 (W.D.N.Y. Mar. 30, 2010) (Plaintiff's medical records belie defendants' assertion that plaintiff has not met the objective standard. The records show "a *serious* respiratory condition" which includes *"severe* asthma, COPD") (citation to record omitted and emphasis in original)).

Allegations regarding the subjective component, however, are lacking. Plaintiff alleges only that since his 1995 admission to DOCCS, Annucci, Koenigsmann and Bruen, three very high-level supervisor--some who were not in their current positions in 1995--gave "lip service" to the N.Y. Clean Air Act requiring smoke free environments in DOCCS facilities and caused non-smoking inmates to be exposed to second-hand smoke from inmates and staff. Under the subjective component, "the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 99 F.3d at 553 (internal quotation marks and citations omitted). The required state of

mind, equivalent to criminal recklessness, in that the official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer*, 511 U.S. at 837); *cf. Helling*, 509 U.S. at 36 ("[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct . . . .").

Plaintiff's allegation that these three Defendants did not enforce the non-smoking policy within DOCCS facilities, is wholly conclusory and unsupported by any facts that they knew of and disregarded an excessive risk of second-hand exposure to Plaintiff. First, there are no allegations when these Defendants first assumed their supervisory positions with DOCCS and that, when they assumed those positions, they were aware of the type or amount of second-hand exposure to Plaintiff within DOCCS.

Second, simply alleging they gave "lip service" to the N.Y. Clean Air Act does not establish Defendants' personal involvement in the alleged harm to Plaintiff. *See Colon*, 58 F.3d at 873. Plaintiff's Complaint refers to one grievance he filed wherein he claims he raised this issue and therefore exhausted his administrative remedies. ECF No. 1, ¶ 8, and p. 21. CORC denied that part of the multi-faceted grievance relating to smoking stating, that smoking is prohibited by the Clean Air Act and inmates who violate the Act are subject to discipline, and that Plaintiff should take up any issues through sick-call. *Id.* at p. 21. An allegation that a grievance was denied is not, alone, sufficient to allege the personal involvement of a superintendent who denied the grievance. *See, e.g.*, *Mateo v. Fischer*, 682 F. Supp. 423, 430 (S.D.N.Y. 2010); *Rosario v. Fischer*, No. 11 Civ. 4617 (JPO) (FM), 2012 WL 4044901, at *5 (S.D.N.Y. Aug. 28, 2012). Therefore, it is not sufficient to allege that the denial of a grievance alone establishes the personal involvement of

8

Defendants at the level of Annucci, Koenigsmann and Bruen, who, in all likelihood, were not aware of the grievance.  In other words, there are no plausible allegations that these supervisory officials had notice of Plaintiff's grievance and failed to act to correct on ongoing constitutional violation.  *See Colon*, 58 F.3d at 873 (the defendant may be liable if, after being informed of the violation through a report or appeal, failed to remedy the wrong).

Accordingly, Plaintiff has not alleged an Eighth Amendment violation against these Defendants related to second-hand smoke exposure and this claim will be dismissed unless Plaintiff files an amended complaint—if sufficient facts exist—alleging a plausible claim of deliberate indifference.

### 2.  Failure to Inform and Treat COPD and CHD

Plaintiff alleges that per state policy, Defendants Koenigsmann, Wilson, Williams, Graf, Schunk, Bonning, Hawley and Jane Doe, Nurse, had a duty to provide him with "adequate health care" but they failed to "inform Plaintiff of COPD and their failure, is to deny treatment to stop a progressive, degenerative, incurable lung disease . . ."  ECF No. 1, ¶¶ 10-11.  As noted above, *see supra* at 5, n.4, this allegation appears to allege that Defendants did not inform Plaintiff of the disease of COPD, not that they failed to inform him that he suffered from COPD when they first learned that he suffered from the disease.  Even if this claim alleges that Defendants timely failed to inform him that he suffered from COPD and failed to treat it adequately, it fails to state a claim of deliberate indifference.

While the Court has found—for purposes of screening only—that Plaintiff's COPD is a serious medical need, there are no allegations that Defendants were deliberately indifferent when they either failed to inform him that he could develop COPD at Attica or did not inform him that he suffered from COPD and failed to treat it adequately.  The only thing alleged is that Defendants

had a non-delegable duty to provide adequate health care to all inmates and, despite this duty, Defendants did not inform him of COPD, a progressive, degenerative disease.  However one is to construe this allegation, it is clear that it does not allege a plausible claim of deliberate indifference. Plaintiff's claim therefore will be dismissed unless he files an amended complaint, if sufficient facts exist, to allege a plausible claim for relief.

### 3.  Use of Soy Products in Alternative Meal

Plaintiff alleges that Defendants Annucci, Bruen and Schallinger, DOCCS's Food Services Director, failed to provide a nutritious alternative religious diet to him as a practicing Shia Muslim. The diet provided contains more than the FDA's recommended daily intake of soy, which has contributed to his CHD and thyroid dysfunction.   ECF No. 1, ¶¶ 12-13, 19.  He alleges both a denial of his free exercise rights under the First Amendment and a nutritional diet in violation of the Eighth Amendment.

#### (a) <u>First Amendment</u>

The Free Exercise Clause of the First Amendment, which protects the free exercise of religion, extends to prisoners and includes their right to meals that comport with religious requirements.  *Ford v. McGinnis*, 352 F.3d 582, 588, 597 (2d Cir. 2003); *see also McEachin v. McGuinnis*, 357 F.3d 197, 203-04 (2d Cir. 2004).  A claim under the Free Exercise Clause requires that "a plaintiff . . . show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest."  *Barnes v. Furman*, 629 F.  App'x 52, 55 (2d Cir. 2015).  "[T]he burden remains with the prisoner to show that these penological concerns were irrational."  *Ford*, 352 F.3d at 595 (quotation omitted).  The courts should not "try to judge the significance of particular devotional obligations to an observant practitioner of faith*."  McEachin*, 357 F.3d at 201 (quotation omitted).

"Rather, a court should consider whether the plaintiff has 'demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.'" *DeJesus v. Bradt*, 174 F. Supp. 3d 777, 784 (W.D.N.Y. 2016) (quoting *Ford*, 352 F.3d at 595 (quotation omitted)).

"[A] substantial burden exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quotation omitted) (alteration in original). "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203; *see Ford,* 352 F.3d at 593–94 (Muslim inmate's free exercise rights substantially burdened if prison officials denied request for a meal to celebrate Eid ul-Fitr feast); *Holland v. Goord,* 758 F.3d 215, 221–22 (2d Cir. 2004) (ordering Muslim inmate practicing Ramadan to drink water for a urine sample during fast substantially burdened free exercise rights); *Torres v. Aramark,* No. 14–CV–7498 (KMK), 2015 WL 9077472, at *9–10 (S.D.N.Y. Dec. 16, 2015) (Muslim plaintiff's allegations that he was forced to choose between eating nutritionally adequate meals and complying with his religious fasting requirements during Ramadan stated more than a *de minimis* violation). However, "[a]ll that is required for a prison diet not to burden an inmate's free exercise of religion is the provision of a diet sufficient to sustain the prisoner's good health without violating [his religion's] dietary laws." *Muhammad v. Warithu–Deen Umar*, 98 F. Supp. 2d 337, 344 (W.D.N.Y. 2000).

Plaintiff's allegations on this claim are unclear. He claims that he cannot eat non-halal meats and fish, "even if blessed by a Jewish rabbi," since "Shia's cannot eat meats and fish killed by non-Muslims." ECF No. 1, ¶ 12. DOCCS's use of soy in the Alternate Diet, "which contains no meats, but sometimes fish blessed by Orthodox Union has denied Plaintiff a nutritional diet and

[he is] being forced to eat more the FDA recommended 25g of soy . . . ." *Id.*, ¶ 13.  Defendants have not provided a Halal substitute and "ignore[d] religious rights . . . ." *Id.,* ¶ 18.

At this time, and without questioning whether Plaintiff's religious beliefs are sincerely held, Plaintiff simply has not cogently and plausibly alleged that his sincerely held religious beliefs were substantially burdened by the Alternative Diet provided within DOCCS.  In other words, and assuming this claim is premised on the allegation that the Alternate Diet does not comply with the tenets of his faith, Plaintiff has failed to allege that Defendants had substantially burdened his free exercise of religion because the Alternative Diet offered by DOCCS does not meets the requirements of a religiously compliant diet.  This claim must be dismissed but Plaintiff will be provided the opportunity to amend the Complaint in which must allege how he was not provided a diet that complied with the tenets of his faith and how that diet substantially burdened his religious beliefs.

(b) Eighth Amendment

"[T]he Eighth Amendment . . . require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Couqhlin*, 725 F.2d 12, 15 (2d Cir. 1983)  (internal quotation marks omitted).  Like other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  *Jolly,* 76 F.3d at 480 (citations omitted).  "[A] prisoner may prevail only where he proves both an objective element that the prison officials' transgression was sufficiently serious and a subjective element that the officials acted, or omitted to act, with a sufficiently culpable state of mind, i.e., with deliberate indifference to inmate health or safety."  *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer,* 511 U.S. at 834) (internal quotation marks omitted).

Plaintiff alleges that the amount of soy in the Alternative Diet contains more than the FDA's recommended daily dose and that this has contributed to his CHD and high "[t]hyroid [d]isfunction" levels and "deficiencies in calcium and vitamin D, D12 [and] lower [HDL] cholesterol, etc. . . ."  ECF No. 1, ¶¶ 13-14.  This allegation is wholly conclusory and completely unsupported.  It does not allege that he suffered from a sufficiently serious harm to his health as a result of the use of soy in the Alternative Diet.  Further, the only allegation regarding deliberate indifference is that in 2011, Defendants knew that he was required to undergo follow up testing for his thyroid levels every three months and, on one occasion, after traveling over 100 miles for said testing, he was "denied [an] appointment due to wrong date," resulting in his thyroid levels not being monitored.  *Id.*, ¶¶ 15-18.  The Court finds these allegations do not satisfy the subjective component of this Eighth Amendment claim.

Plaintiff's Eighth Amendment claim therefore must be dismissed unless he files an amended complaint as directed below.

### 4.  Excessive Force: Restraints

Plaintiff alleges that on April 17, 2018, Defendant Sgt. John Doe and two other officers were assigned to transport him to an outside medical visit at ECMC's cardiac unit.  He is scheduled for visits every six months.  Sgt. John Doe refused to comply with a prior CORC decision that found that leg-shackles and handcuffs should not be used when Plaintiff is going up and down stairs and inside secure areas.  Plaintiff suffers from swelling of his hands and legs with the use of leg-shackles and handcuffs due to prior injuries.  Sgt. John Doe told Plaintiff he could either go to his appointment with leg-shackles and handcuffs or refuse the medical trip.  Plaintiff refused the trip and was forced to walk back to the infirmary from the front gate in full restraints.  ECF No. 1, ¶¶ 20-24.

The use of force is a violation of the Eighth Amendment when it is applied in a "malicious[] and sadistical[] [manner] to cause harm,]" rather than "in a good-faith effort to maintain or restore discipline[.]" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

Plaintiff alleges only that his hands and legs swell due to prior injuries to his ankle and wrists and that Sgt. John Doe forced him to forego the trip and walk back to the infirmary in full restraints.   He does not allege he suffered any injury from this incident.   He alleges only that Nurse Doe asked him questions that disclosed personal information and that at two follow up sick call appointments his unspecified "wrist injury" was ignored.   This does not allege, in any way, the objective component of a claim of excessive force nor does it allege that Sgt. John Doe acted maliciously or wantonly.   *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (stating there must be a "necessary level of culpability, shown by actions characterized by wantonness." (internal quotation marks and citations omitted)).   This claim, therefore, fails to state a claim but Plaintiff will again be provided the opportunity to amend this claim.

### 5.  Denial of Medical Care

Plaintiff alleges that when he returned to the infirmary after refusing the medical trip, Defendant Jane Doe, Nurse, questioned him why he refused the trip, thereby disclosing private medical information.   When he protested, Nurse Doe gave him an Inmate Refusal Form to complete.   He noted on the Form the reason he refused the trip.   *Id.*, ¶ 25.   At a follow-up sick call a few days later (April 20 or 26) and another one on June 6, Defendants Bunning and Hawley, Nurses, ignored Plaintiff's wrist injury and referred him to Defendant Schunk, Physician Assistant, "who was obligated to recall refusal per DOCCS policy [No. 7.18]" to provide adequate medical

14

treatment to inmates.  *Id.*, ¶ 26.  He further alleges that his pacemaker had a five year battery life that expired on August 20, *2016*.  *Id.*; ECF No. 3, Declaration in Support of Motion for TRO, ¶¶ 2-3 (emphasis added).[3]

As addressed above, *see supra* at 8-9, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard set out in *Estelle*, 429 U.S. at 104-05.  This standard has both objective and subjective components.  *Hathaway*, 37 F.3d at 66.  Objectively, a plaintiff must allege a serious medical condition.  *Id.* at 66.  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison*, 219 F.3d at 136-137 (quoting *Chance*, 143 F.3d at 702 (2d Cir. 1998) (internal quotation marks omitted)).  Subjectively, a plaintiff must adequately allege that the prison official had actual knowledge of his serious medical need but was deliberately indifferent.  *See Farmer*, 511 U.S. at 837.

Plaintiff fails to plausibly allege both components.  First, he refers to only a prior wrist injury for which he was receiving physical therapy in January 2018, ECF No. 1, ¶ 24, and that when he returned to the infirmary Jane Doe Nurse asked him questions related to why he refused the trip.  Upon two later sick-call appointments his injury was "ignored," and he was referred to Schunk "who was obligated to recall refusals per [DOCCS] policy . . ., showing deliberate indifference."  *Id.*, ¶ 26  Simply alleging a wrist injury and that it was "ignored" and "referred" to another medical provider does not plausibly allege either a serious medical condition or deliberate indifference to said condition or injury.  Plaintiff will be provided leave to amend this claim.

---

[3] This Declaration states that Plaintiff's pacemaker's battery needed to be replaced by August 20, *2017*, five years after the pacemaker was first implanted following a heart attack.  ECF No. 3, ¶ 2 (emphasis added).  In a recent letter to the Court, following the Second Circuit's remand but before issuance of the Mandate, Plaintiff noted that the battery was replaced on October 2, 2019, but "not before its failure to help the heart."  ECF No. 12.  On October 10, he was taken by ambulance to a hospital emergency room in Buffalo and placed in ICU until October 15, due to an apparent heart attack.  Thus, to the extent, Plaintiff's Motion for a TRO requested immediate care for replacement of the pacemaker battery, it is moot.

Similarly, Plaintiff's allegation that his pacemaker battery had to be replaced every five years and was not, fails to allege deliberate indifference. One failure to transport Plaintiff to a cardiac visit does not sufficiently allege deliberate indifference. As noted, *see supra* at 20, n.9, Plaintiff's recent letter to the Court indicates he had his pacemaker battery changed but he later suffered a heart attack. He appears to imply that the two are related. Plaintiff may include these allegations in his amended complaint. The Court makes no determination at this time whether the new allegations set forth in the letter sufficiently state a claim under the Eighth Amendment.

### 6. Denial of Access to Courts

In a wholly conclusory fashion, Plaintiff alleges that Defendant Hembrook, Law Library Supervisor, and other law library supervisors, with the "tacit approval" of Annucci, Bruen, Clinton and Noeth, used their positions to "obstruct" his access to courts by denying notary services and "law library access." This was done to "stop and chill" his pending stage and federal court litigation. ECF No. 1, ¶¶ 27-28.

While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as " 'the Constitution requires no more than reasonable access to the courts.' " *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (quoting *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *accord Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

Thus, a plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 351-52. Taking Plaintiff's claim as true, he nevertheless offers no facts to explain how his pending litigation has been prejudiced by Defendant's conduct. *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Accordingly, Plaintiff's claim that he has been denied access to the courts is hereby dismissed but with leave to amend complaint.

### 7. Retaliation

Plaintiff alleges that on February 8, 2018, Defendants J. Moore, Noeth, Bruen, and Annucci ordered Defendant J. Spangler and John Doe #1 to conduct a cell search. Spangler and John Doe #1 seized "all" legal materials, religious materials and other items in an attempt to "stop and chill" Plaintiff's ongoing litigation. ECF No. 1, ¶ 29. On March 5, Defendant Clinton conducted a Tier III Hearing that was "commenced" by Defendant Moore. Clinton "denied" Plaintiff "witnesses, right to confront accusations, documentary evidence, etc." *Id.*, ¶ 30. Plaintiff was found guilty and sentenced to 255 days SHU confinement and loss of privileges.

While Plaintiff titles this claim "Retaliation," there are no allegations to support such a claim. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."

*Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted).   Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Colon*, 58 F.3d at 872 ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care").   Thus, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim . . . ." citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Because this claim alleges no facts to support a claim of retaliation, it must be dismissed. *See id.*  Plaintiff, however, will be granted leave to amend this claim.

To the extent this claim can be construed as a procedural due process claim, it too fails to state a claim upon which relief can be granted but Plaintiff again will be provided leave to amend. Assuming Plaintiff alleges a protected liberty interest, *see Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), he does not plausibly allege he was denied due process.  The Fourteenth Amendment's Due Process Clause requires that prisoners appearing at a disciplinary hearing be provided 24-hours written notice of the charges against them, the right to call witnesses and present documentary evidence, the aid of a staff member or inmate in presenting a defense, an impartial tribunal, and a written statement of the basis for the tribunal's decision.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Simply alleging that he was denied witnesses, documents or to "confront accusations" is wholly conclusory and does not state a claim upon which relief can be granted.  See *Rush v. Canfield*, 640 F. App'x 70, 71 (2d Cir. May 20, 2016) (Summary Order) (plaintiff's assertion that

he was " 'denied the right to call witnesses and the right to assistance,' is a bare legal conclusion incapable of surviving a motion to dismiss").

## B.  Motion for Preliminary Injunction

When Plaintiff first filed this action, he sought a "90 days preliminary injunction" enjoining Defendants from denying him treatment for "Pacemaker[,] COPD [and] Urology.  ECF No. 3, Declaration, ¶¶ 6-7.  His pacemaker battery has been replaced, *see supra* at n.9, and, as set forth above, his claims related to the denial of medical care fail to state plausible claims for relief and must be amended before they may proceed.  Accordingly, Plaintiff's allegations do not support his request for a preliminary injunction and the Motion must be denied without prejudice to refiling upon a showing sufficient to support such the relief requested.  *See Mullins v. City of N.Y.*, 626 F.3d 47, 52–53 (2d Cir. 2010) (setting forth standards for granting a preliminary injunction); *see also Distrib. Sys. America, Inc. v. Village of Old Westbury*, 785 F. Supp. 347, 352 (E.D.N.Y. 1992) ("A preliminary injunction is considered an 'extraordinary remedy that should not be granted as a routine matter.' ") (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, Plaintiff's Complaint must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless he files an amended complaint by **July 15, 2020** in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action.  "It is well established that an amended complaint ordinarily supersedes

the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994).   Therefore, Plaintiff's amended complaint must include all of the allegations against each of the Defendants, so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer upon service.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the Complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B

## **ORDER**

IT HEREBY IS ORDERED, that Plaintiff's Motion to proceed *in forma pauperis* is granted;

FURTHER, that Plaintiff's Motion for a preliminary injunction is denied without prejudice;

FURTHER, that Clerk of Court shall amend the caption of this action and add J. Clinton, Deputy Superintendent, Attica, and J. Spangler, Investigator, as Defendants;

FURTHER, that Plaintiff is granted leave to file an amended complaint as directed above by **July 15, 2020**;

FURTHER, that the Clerk of Court is directed to send to Plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above by **July 15, 2020**, the Complaint shall be dismissed with prejudice without further order of the Court;

FURTHER, that in the event the Complaint is dismissed because Plaintiff has failed to file an amended complaint by **July 15, 2020**, the Clerk of Court shall close this case as dismissed with prejudice without further order; and

FURTHER, that in the event the Complaint is dismissed because Plaintiff has failed to file an amended complaint by **July 15, 2020**, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

_____
Frank P. Geraci, Jr.
United States District Judge


DATED:      May 18, 2020
            Rochester, NY