UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REGINALD GHAFFAAR MCFADDEN,

       Plaintiff,

    -v-                                       18-CV-6684 FPG
                                                   ORDER

ANTHONY  ANNUCCI,  COMMISSIONER
OF DOCCS, et al.,

       Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff, Reginald Ghaffaar McFadden, is a prisoner confined at the Attica Correctional Facility ("Attica"). Plaintiff's Amended Complaint presents numerous claims arising under 42 U.S.C. § 1983. ECF No. 17.

Currently before the Court are (1) Plaintiff's Motion for Temporary Restraining Order regarding COVID-19, ECF No. 15; (2) Plaintiff's Motion for Temporary Restraining Order regarding Retaliation, ECF No. 21; (3) Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 23; (4) Plaintiff's Motion for Default Judgment, ECF No. 30; (5) Plaintiff's Motion to Strike Pleadings, ECF No. 33; (6) Plaintiff's Motion for Summary Judgment, ECF No. 37; (7) Plaintiff's Motion for Consolidation, ECF No. 38; (8) Plaintiff's Motion to Compel, ECF No. 39; and (9) Plaintiff's Motion to Effect Service, ECF No. 40. For the reasons below, Defendants' Motion to Dismiss, ECF No. 23, is GRANTED IN PART and DENIED IN PART; Plaintiff's Motions, ECF Nos. 15, 21, 30, 33, 37, 38, and 40 are DENIED; and Plaintiff's Motion to Compel, ECF No. 39, is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

Plaintiff commenced this action on September 25, 2018 when he filed his Complaint, ECF No. 1. Plaintiff also sought permission to proceed *in forma pauperis*. Initially, the Court denied Plaintiff permission to proceed *in forma pauperis* under 28 U.S.C. § 1915(g) because it found Plaintiff had garnered three or more strikes and did not allege that he was in imminent danger of serious physical injury. ECF No. 8. Plaintiff appealed that order, and the United States Court of Appeals for the Second Circuit vacated the order and remanded this action because it determined that Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury. ECF No. 13.

On May 19, 2020, the Court granted Plaintiff permission to proceed *in forma pauperis* and screened the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. ECF No. 14. In its Decision and Order screening the Complaint, ECF No. 14, the Court, *inter alia*, dismissed all claims and granted leave to file an amended complaint by July 15, 2020.

On June 3, 2020, Plaintiff filed a Motion for Temporary Restraining Order, ECF No. 15, with an attached amended complaint. The Court issued an order on June 5, 2020, directing the Clerk of Court to, *inter alia*, (1) detach the Amended Complaint, ECF No. 17, and docket it separately from the Motion for Temporary Restraining Order; (2) cause the United States Marshals Service to serve copies of the Summons, Amended Complaint and motion papers upon the named Defendants; and (3) forward a copy of the Amended Complaint and motion papers to Gary M. Levine Assistant Attorney General. [1] ECF No. 16.

---

[1] Per a June 9, 2020 notation on the case docket, the Clerk of Court emailed a copy of the Amended Complaint, ECF No. 17, Motion for TRO, ECF No. 15, and the Court's June 5, 2020 Order, ECF No. 16, to Assistant Attorney General Gary M. Levine. *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, June 9, 2020 Docket Entry.

In response to the Court's order, ECF No. 16, summons were issued on June 9, 2020, and mailed to the U.S. Marshals Service in Buffalo for service, as to 17 Defendants: Anthony J. Annucci, Jr., Deborah Bonning, Kevin Bruen, J. Clinton, Christopher Dutty, Deborah Graf, Vincent Hawley, Brian Hembrook, Sandra Michalek, J. Moore, John Morley, MD, Joseph Noeth, Christina Olney, Alicia Schunk, J. Spangler, D. Williams, and Luci Wilson. *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, June 9, 2020 Docket Entry.

On June 11, 2020, Plaintiff requested appointment of counsel. ECF No. 18. On July 7, 2020, the Court denied Plaintiff's request for counsel without prejudice. ECF No. 20. The Court also issued a *Valentin* order, directing the New York State Attorney General's Office to ascertain the full names of Defendants "__ S, Sergeant ACF-DOCCS" ("Sgt. S.") and "M Z __, Registered Nurse #401" ("Nurse M.Z.") and provide addresses at which they could be served with the Summons and Amended Complaint.[2] ECF No. 20. In an attorney declaration filed along with Defendants' motion to dismiss, defense counsel timely responded to the Court's *Valentin* order, stating "[u]pon information and belief, J. Moore, J. Spangler, RG 'M Z,' and Sgt. 'S' were not served and have not been identified." ECF No. 23-1 at 3.

On July 15, 2020, Plaintiff filed a letter motion styled as a Temporary Restraining Order "to prevent Defendants from taking further retaliatory action." ECF No. 21.

On July 31, 2020, executed summons were returned for 13 Defendants: Anthony J. Annucci, Jr, Deborah Bonning, Kevin Bruen, J. Clinton, Christopher Dutty, Deborah Graf, Vincent

---

[2] The Clerk of Court emailed the July 7, 2020 *Valentin* order to Assistant Attorney General Gary M. Levine. *See* ECF No. 20.

Hawley, Brian Hembrook, John Morley, MD, Joseph Noeth, Christina Olney, Alicia Schunk, and D. Williams.[3] *See* ECF No. 22.

On August 17, 2020, Defendants moved to dismiss the Amended Complaint and all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 23. In the alternative, Defendants requested an order under Federal Rule of Civil Procedure 12(e) for a more definite statement. *Id.* Defendants also responded in opposition to Plaintiff's Motion for Temporary Restraining Order. ECF No. 24.

On August 27, 2020, Plaintiff responded in opposition to Defendant's motion to dismiss, ECF No. 29, and filed a Motion for Default Judgment. ECF No. 30. On September 8, 2020, Plaintiff filed a "Supplemental Submission In Support of Denial of Defendant's Motion to Dismiss and Granting Default Judgment," ECF No. 31, in which he (1) added further argument to his Motion for Default Judgment; and (2) offered to resolve this case in lieu of default judgment in exchange for "Immediate Medical Deporttion [sic] Out Of The United States Forever" to "the Holy City Of Najaf, Iraq." ECF No. 31 at 3.

On September 21, 2020, Plaintiff filed (1) a reply to Defendants' opposition to his default judgment motion, ECF No. 32; and (2) a Motion to Strike Pleadings, ECF Nos. 33, 34.[4] On October 8, 2020, Plaintiff filed a sur-reply to Defendants' motion to dismiss, ECF No. 35, without seeking

---

[3] An executed summons was returned as to Defendant Sandra Michalek on August 26, 2020. ECF No. 26. On September 1, 2020, unexecuted summons were returned as to Defendants J. Moore and J. Spangler, indicating that these individuals could not be located. ECF No. 27. A summons was not returned as to Defendant Luci Wilson. *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, Docket.

[4] Plaintiff's "Reply to Defendant's Opposition to Motion for Default Judgment," ECF No. 32, states that Plaintiff is "in receipt of [Assistant Attorney General] Brown's Sept. 10th, 2020 Declaration In Opposition to [Plaintiff's] Motion for Default Judgment." Plaintiff's Reply proceeds to quote passages from this Sept. 10, 2020 Declaration. *See generally* ECF No. 32. The Court did not and, to date, has not received Defendants' response in opposition to Plaintiff's Motion for Default Judgment referenced in this document. *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, Docket. Assistant Attorney General Brown is directed to provide the Court a copy of this document via filing on the electronic case docket as soon as practicable.

leave of Court. On January 5, 2021, Plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) or (d). ECF No. 37.

On February 1, 2021, Plaintiff filed two additional motions: (1) a Motion to Compel "the Defendants' counsel, AAG Matthew D. Brown, to comply with this Court's Order that Ordered Defendants to identify the names, titles of defendants" Sgt. S. and Nurse M.Z.; and (2) a Motion to Effect Service on Defendants J. Moore and J. Spangler. ECF Nos. 39, 40. On February 5, 2021, Defendants filed a response in opposition to Plaintiff's summary judgment motion and requested that the Court bar Plaintiff from filing additional motions until the Court rules on the pending motions. ECF No. 41 at 6.

Pending before the Court are (1) Plaintiff's Motion for Temporary Restraining Order regarding COVID-19, ECF No. 15; (2) Plaintiff's Motion for Temporary Restraining Order regarding Retaliation, ECF No. 21; (3) Defendant's Motion to Dismiss for Failure to State a Claim, ECF No. 23; (4) Plaintiff's Motion for Default Judgment, ECF No. 30; (5) Plaintiff's Motion to Strike Pleadings, ECF No. 33; (6) Plaintiff's Motion for Summary Judgment, ECF No. 37; (7) Plaintiff's Motion to Consolidate, ECF No. 38; (8) Plaintiff's Motion to Compel, ECF No. 39; and (9) Plaintiff's Motion to Effect Service, ECF No. 40.

## DISCUSSION

The Court considers Plaintiff's Motion for Default Judgment and Motion to Strike first because, if granted, consideration of Defendant's Motion to Dismiss would be unnecessary. *See Eberhard Investment Assocs., Inc. v. Santino*, No. 01 Civ.3840 LMM, 2003 WL 22126846, at *1 (S.D.N.Y. Sept. 12, 2003) ("The Court considers first [Plaintiff's] motions for default judgments."); *see also Smith v. Donaher*, No. 12–CV–6035–CJS, 2013 WL 2531750, at *3

(W.D.N.Y. June 10, 2013) (considering plaintiff's motion for default judgment before proceeding to defendant's motion to dismiss).

## I.        Plaintiff's Motion for Default Judgment and Motion to Strike

On August 27, 2020, Plaintiff filed a Motion for Default Judgment against "all named Defendants" seeking default judgment under Federal Rule of Civil Procedure 55(b)(2). ECF No. 30. Plaintiff argues that Defendants received their summons and complaint by June 27, 2020, and Defendants' motion to dismiss, filed on August 17, 2020, was therefore untimely. *See id*.

Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading under Federal Rule Civil Procedure 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312–a.[5] *See Lewis v. Gowanda Correctional Facility*, No. 15–CV–0168A, 2015 WL 5146997, at *4 n.3 (W.D.N.Y. Aug. 28, 2015). If the defendant and/or the defendant's agent fails to return an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail, he must file and serve his answer or other responsive proceeding in the 21-day time period set out in Federal Rule of Civil Procedure 12(a)(1)(A)(i).

Here, summons were mailed by the US Marshals Service on June 18, 2020. *See* ECF No. 22. On July 31, 2020, executed summons were returned for 13 Defendants: Anthony J. Annucci, Jr, Deborah Bonning, Kevin Bruen, J. Clinton, Christopher Dutty, Deborah Graf, Vincent Hawley, Brian Hembrook, John Morley, MD, Joseph Noeth, Christina Olney, Alicia Schunk, and D. Williams. *Id.* The Acknowledgement of Receipt of Summons and Complaint was signed by

---

[5] The Court's September 28, 2012 Standing Order may be accessed on the Court's website at the following address: https://www.nywd.uscourts.gov/sites/nywd/files/StandingOrder_Standing%20Order%20104.pdf.

Assistant Attorney General Matthew Brown and dated July 27, 2020 for each of the 13 Defendants. Because the Acknowledgment was not returned within 30 days, Defendants did not enjoy the benefit of the 60-day timeframe under the Court's September 28, 2012 Standing Order. Nonetheless Defendants' motion to dismiss was timely.

"Service is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender. The signed acknowledgement of receipt shall constitute proof of service." *Morris v. New York Gaming Commission*, No. 18-CV-00384V(F), 2019 WL 2423716, at *3 (W.D.N.Y. Mar. 14, 2019) (quoting N.Y.C.P.L.R. § 312–a(b)) . Service was therefore complete on July 27, 2020, and Defendants' motion to dismiss, filed August 17, 2020, was timely filed within the 21-day time period set out in Federal Rule of Civil Procedure 12(a)(1)(A)(i). Plaintiff's Motion for Default Judgment is therefore DENIED. Plaintiff's Motion to Strike, ECF No. 33, which is premised on a similar misunderstanding of the time allotted for a responsive pleading in this case, is DENIED for the same reasons.

## II.    Defendants' Motion to Dismiss

### A.    Legal Standard

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Although a court "is generally limited to the [complaint] when considering" a motion to dismiss, it may also consider "matters of which judicial notice may be taken," including public records evidencing an individual's conviction. *Magnotta v. Putnam Cty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *3 (S.D.N.Y. Feb. 24, 2014).

Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## B. Analysis

The Court has identified 12 claims, or groups of claims, and considers each in turn below. As Plaintiff was advised in this Court's May 19, 2020 Decision & Order related to the sufficiency of the allegations in his initial Complaint, the allegations in the Amended Complaint completely replace the prior Complaint in this action. *See* ECF No. 14 at 19. The factual allegations below are drawn from Plaintiff's Amended Complaint and are accepted as true with all inferences drawn in Plaintiff's favor, as required at this stage of the litigation.

### 1. Failure to Return Plaintiff to ECMC Cardiology for Pacemaker

On April 19, 2011, Plaintiff suffered a heart attack resulting in the loss of 50% of his heart's function and the placement of two stents. ECF No. 17 at 13. On August 7, 2013, Plaintiff was admitted to Erie County Medical Center ("ECMC") because of his heart, and, on August 20, 2012, ECMC determined that Plaintiff needed a Pacemaker. *Id*. The Pacemaker Plaintiff was given had an expected battery life of five years, depending on the condition of Plaintiff's heart. *Id.* Plaintiff

was discharged on August 21, 2012 and his discharge instructions indicated that he should return to ECMC's Cardiology Department within three months of discharge to have the Pacemaker checked. *Id.* at 8. Defendants Deborah Graf, a Physician Assistant, and Deborah Bonning, a Registered Nurse, reviewed the discharge instructions on August 30, 2012 but failed to return Plaintiff to ECMC Cardiology for follow-up to check the Pacemaker, even though it was malfunctioning. *Id.* at 7-8. This prompted Plaintiff to file a grievance. ECF No. 17 at 8.

To the extent Plaintiff is bringing a claim that he was not returned for cardiology follow-up in accordance with the discharge instructions, that claim has already been dismissed with prejudice in another action he brought before this Court. *See McFadden v. Fischer*, 13-CV-559-FPG, 16-CV-6105-FPG, 2016 WL 5661824, at *15 (W.D.N.Y. Sept. 30, 2016). Therefore, any claim in the Amended Complaint related to a failure to return Plaintiff to ECMC cardiology in accordance with the discharge instructions is DISMISSED WITH PREJUDICE.

### 2. Removal of Left Arm Brace and Damage to Left Arm from Handcuffing

Plaintiff's August 21, 2012 discharge instructions also stated "No Lifting Left Arm x 6 weeks, No B/P Left Arm." ECF No. 17 at 8. Despite this instruction, Defendant Bonning removed Plaintiff's left arm brace on August 30, 2012, which subjected him to the Special Housing Unit's ("SHU") practice of "having to lift arms to be handcuffed through an opening chest level backward, resulting in damage to left arm." *Id.*

The Court does not read these allegations as separate claims but rather as part of the backstory regarding Plaintiff's many alleged injuries and claims. Indeed, Plaintiff does not list any claims related to these specific allegations on his list of claims in the Amended Complaint, ECF No. 17 at 29, and Defendants' Motion to Dismiss does not address these allegations. *See* ECF No.

23. Even assuming they are intended as separate causes of action, the allegations are insufficient to state a claim.

Eighth Amendment claims are analyzed under the "deliberate indifference" standard set out in *Estelle v. Gamble*, 429 U.S. 97 (1976); *Grayson v. Courtney*, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296, at *8 (N.D.N.Y. Dec. 3, 2018). This standard has both objective and subjective components. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Under the objective component, the alleged medical need or condition must be "sufficiently serious." *Id.* A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted).

The use of force is a violation of the Eighth Amendment when it is applied in a "malicious[] and sadistical[] [manner] to cause harm," rather than "in a good-faith effort to maintain or restore discipline[.]" *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992). To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

With respect to the removal of the left arm brace, Plaintiff's allegations are devoid of the "sufficiently serious" medical need, in that there is no indication that Defendant Bonning's decision to remove the brace resulted in "a condition of urgency, one that may produce death, degeneration, or extreme pain." *See Hathaway*, 37 F.3d at 66. As for the subsequent placement of Plaintiff in handcuffs at the SHU, and to the extent Plaintiff is attempting to allege an excessive

force claim related to that incident, the allegations fail to name which Defendants engaged in the alleged conduct and thus fail to state a claim upon which relief can be granted and must be dismissed. *See McFadden*, 2016 WL 5661824, at *12.[6] Any claims related to the removal of Plaintiff's left arm brace and/or damage to Plaintiff's left arm from handcuffing in the SHU are DISMISSED WITHOUT PREJUDICE.

### 3. Failure to Replace Pacemaker Batteries Within 5 Years and Forced Discharge from Hospital after Pacemaker Procedure

August 20, 2017 marked the five-year period since Plaintiff's Pacemaker was installed, and he was due at that time for the battery to be replaced. ECF No. 17 at 8. Defendants Graf, Schunk, Bonning, and Williams "refused to . . . replace Pace Maker's Generator/Batteries," prompting Plaintiff to file a grievance. *Id.* It was not until May 16, 2019 that Defendant Graf referred Plaintiff for a Pacemaker battery replacement. *Id.* On August 21, 2019, a cardiologist confirmed that Plaintiff's Pacemaker generator or battery needed to be replaced. *Id.*

On October 2, 2019, Defendants "provided Pace-Maker Replacement but not before its malfunctioning [caused] damage to the already weak heart," resulting in an emergency hospitalization and placement in the Intensive Care Unit from October 10, 2019 through October 15, 2019, "due to an apparent heart attack." *Id.* Plaintiff states that Defendants "knew or should have known, that Pace-Maker Generator/Battery needed to be changed, without Plaintiff having to repeatedly file grievances." ECF No. 17 at 8.

---

[6] Claims arising from the removal of the left arm brace and subsequent handcuffing in the SHU appear to be time-barred, though the Court dismisses them here for failure to state a claim. *See McFadden*, 2016 WL 5661824, at *8 ("While a court should not dismiss a claim on the basis of the statute of limitations without first providing plaintiff with notice and an opportunity to respond, . . . the Court need not provide notice and opportunity prior to dismissing this Claim because the claims asserted therein fail to state a claim upon which relief can be granted and are being dismissed on that basis." (internal citation omitted)).

In addition to Defendants Graf, Schunk, Bonning, and Williams, Plaintiff also alleges that Defendant Sergeant John Doe's actions caused his heart attack. Sgt. S. improperly removed him from the operation room after the October 2, 2019 heart procedure "despite a specific request by medical" to have Plaintiff remain hospitalized overnight. Plaintiff alleges that Sgt. S.'s actions went against a policy "that all patients are held over-night to monitor the patient." ECF No. 17 at 11. Once Sgt. S. returned Plaintiff to his cell, Plaintiff "almost immediately" tried to schedule an appointment with medical but was unable to get one until October 10, 2019. *Id.* By the time Plaintiff was taken to the infirmary on October 10, 2019, he "was having[ ] another Heart Attack," and was taken back to ECMC until October 15, 2019. *Id.* at 11-12.

As discussed above, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard set out in *Estelle*, 429 U.S. at 104-05. This standard has both objective and subjective components. *Hathaway*, 37 F.3d at 66. Objectively, a plaintiff must allege a serious medical condition. *Id.* at 66. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702). Subjectively, a plaintiff must adequately allege that the prison official had actual knowledge of his serious medical need but was deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants argue that Plaintiff fails to allege deliberate indifference with respect to this claim. ECF No. 23-2 at 12. "[A] condition is objectively serious if, among other things, a reasonable doctor or patient would find [it] important and worthy of comment or if it causes chronic and substantial pain to the inmate." *McFadden v. Noeth*, 827 Fed. App'x. 20, 26 (2d Cir. 2010) (summary order) (citations & internal quotations omitted). Liberally construing Plaintiff's

allegations, he has alleged a sufficiently serious condition to satisfy the objective prong. A Pacemaker battery in need of replacement and a heart attack and/or heart damage allegedly resulting from a delay in that replacement, or disruption of adequate follow-up care in the immediate aftermath of a heart procedure, "constitute a condition that a reasonable patient or physician would consider important and worthy of comment or treatment." *Smith v. Outlaw*, No. 15-CV-9961 (RA), 2017 WL 4417699, at *4 (S.D.N.Y Sept. 30, 2017) (concluding plaintiff's heart-related symptoms and alleged heart attack were a sufficiently serious condition to satisfy the objective prong).

Turning to the subjective prong, Plaintiff has alleged that Defendants Graf, Schunk, Bonning, and Williams refused to have his Pacemaker battery replaced and that their refusal prompted to him to file a grievance. ECF No. 17 at 8. Plaintiff has not provided the grievance but has cited a grievance number. *Id.* Liberally construing Plaintiff's allegations, the Court infers that Defendants were aware of the need to replace Plaintiff's Pacemaker battery in August 2017, and any potential harm associated with the failure to do so, because they "refused" to have it replaced despite the fact that 5 years had passed since it was installed. Defendants may also have been aware of Plaintiff's need to have the Pacemaker battery replaced based upon the grievance Plaintiff allegedly filed—however it is unclear what the grievance said and to whom it was directed. *See id.* Nonetheless, Plaintiff has colorably alleged both prongs of an Eighth Amendment claim with respect to Defendants Graf, Schunk, Bonning, and Williams. *See McFadden v. Noeth*, 827 Fed. App'x. at 27.

Plaintiff has also plausibly alleged that Sgt. S. refused to permit him to remain overnight after his heart surgery, despite a specific request by medical personnel to have Plaintiff remain for medical monitoring and against a policy that requires Plaintiff to remain for such monitoring.

13

Accepted as true, these allegations colorably allege the subjective prong of the Eighth Amendment inquiry as to Defendant Sgt. S. *See Farmer*, 511 U.S. at 837. Accordingly, Defendants' Motion to Dismiss these claims is DENIED.

### 4. Excessive Force: Restraints

Plaintiff alleges that on three occasions, April 17, 2018, October 2, 2019, and October 15, 2019, Defendant Sgt. S. and two other officers transported him to outside medical visits in full restraints.[7] ECF No. 17 at 10-12. Defendants argue that these claims fail because Plaintiff has not alleged that he suffered any injuries from these incidents and has not alleged that Defendant Sgt. S. acted with the necessary level of culpability. ECF No. 23-2 at 10. The Court disagrees.

The use of force is a violation of the Eighth Amendment when it is applied in a "malicious[] and sadistical[] [manner] to cause harm," rather than "in a good-faith effort to maintain or restore discipline[.]" *Hudson*, 503 U.S. at 5, 7. To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson*, 32 F.3d at 29. The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim. The core judicial inquiry, . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (citations & internal quotation marks omitted).

Plaintiff alleges that Defendant Sgt. S. forced him on one occasion to walk down a flight of steps, then the length of two football fields, in full restraints, against a policy of escorting prisoners down steps in a secure facility while fully restrained. Furthermore, Plaintiff alleges that

---

[7] It is unclear whether the two other unidentified officers were present on all three occasions or only on October 2, 2019.

during that escort, Sgt. S. harassed him, threatened him, and called him degrading names. ECF No. 17 at 10. On another occasion, Sgt. S. forced Plaintiff to walk in full restraints against a practice of permitting discharged patients to use a wheelchair. Plaintiff alleges that Sgt. S. did this out of "spite and racial animus," in order to get revenge for a past negative history between the two, and in order to make Plaintiff as uncomfortable as possible. Plaintiff alleges that the April 17, 2018 incident resulted in "[p]hysical therapy [having] to be re-started, delaying the healing" of a prior left-ankle injury. *Id.* at 12. Liberally, construing these allegations, they plausibly state a claim under *Wilkins* that the force employed by Sgt. S. was not done in a good-faith effort to maintain or restore discipline but rather "maliciously or sadistically to cause harm." *See Wilkins*, 559 U.S. at 36. Therefore, Defendants' motion to dismiss these claims is DENIED.

### 5.   Denial of Medical Care Regarding Wrist Injury

Plaintiff's allegations regarding this claim are particularly difficult to comprehend, but the Court understands them as follows. At a sick call appointment on June 5, 2018, Defendant Bonning refused to address Plaintiff's wrist injury and Defendant Hawley disagreed over her refusal, resulting in an argument between Bonning and Hawley. ECF No. 17 at 9. Hawley proceeded to refer Plaintiff to Defendant Schunk and Defendant Graf. Plaintiff was seen by Defendant Graf on July 10, 2018, she then made a medical referral to a specialist who, in turn, made a referral for occupational therapy. *Id.* Plaintiff alleges that his physical therapist, N. Fink, falsified a document and, due to that falsification, Plaintiff did not have an opportunity to meet with Fink. *Id.* at 10. In addition, Plaintiff was subsequently written up for refusing that medical appointment. *Id.*

As addressed above, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard. Plaintiff fails to plausibly allege both components of this standard. First, there are no amplifying details regarding his wrist injury that suggest it is "a

condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66. Second, the facts as alleged show Plaintiff was consistently evaluated and referred to medical providers. This belies a finding of deliberate indifference. Furthermore, the allegations that physical therapist N. Fink denied Plaintiff an appointment by falsifying a document are "unsupported, speculative, and conclusory." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). Defendants' motion to dismiss these claims is therefore granted and this claim is DISMISSED WITHOUT PREJUDICE.

### 6.  Denial of Medical Care Regarding Left Ankle Injury

Plaintiff alleges that, after his left ankle injury resulting from the April 17, 2018 transport in full restraints, Defendants Graf, Schunk, and Wilson denied him medical care. Graf and Schunk "refused to provide a cane." ECF No. 17 at 12. Plaintiff underwent an X-ray of the ankle, and based upon those X-ray results, Wilson decided further follow-up with a specialist was not warranted. *Id.* at 13.

These allegations fail to demonstrate that Defendants had actual knowledge of a serious medical need but were deliberately indifferent. *See Farmer*, 511 U.S. at 837. Plaintiff was referred for an X-ray and an X-ray was performed. Without additional allegations, Defendants' motion to dismiss these claims is granted and the claims are DISMISSED WITHOUT PREJUDICE.[8]

### 7.  Retaliation: Cell Search and Disciplinary Hearing

Plaintiff's allegations with respect to these claims are difficult to understand, but the Court reads them as follows. On April 17, 2018 and February 8, 2018, Defendants Sgt. S., Moore, and

---

[8] A summons was not returned as to Defendant Wilson. While "[i]t is ... the well-established law of this circuit that *sua sponte* dismissal of a *pro se* complaint prior to service of process on defendant is strongly disfavored," *McFadden*, 827 Fed. App'x. at 26, here the Attorney General's Office has filed answering papers purportedly representing Defendant Wilson. Therefore, there is no risk that dismissal of claims as to Wilson might "deprive[ ] us of the benefit of defendant's answering papers." *Id.*

Spangler "all knew that Plaintiff was undergoing on-going medical treatment, yet they decided to ignore those concerns, by interfering with medical care, by taking retaliatory action, for exercising a Protected Right." ECF No. 17 at 13, 18-19. Defendant Clinton conducted a Disciplinary Hearing "to deflict [sic]" official misconduct on the part of Sgt. S., Moore, and Spangler. The alleged misconduct was (1) a cell search conducted outside Plaintiff's presence in violation of an official directive; (2) the removal of all legal material, documents, religious books, and personal letters from Plaintiff's cell without his consent in violation of an official directive; and (3) filing a patently false misbehavior report. *Id.*

The disciplinary hearing conducted by Defendant Clinton denied Plaintiff the right to confront witnesses, the right to offer documentary evidence, and the right to a full record on appeal. *Id.* at 14. The hearing resulted in Plaintiff's detention in his cell for 259 days, which interfered with ongoing medical care and treatment, and denied Plaintiff's due process rights.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted). Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d. Cir. 1995) ("[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners

17

will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care"). Thus, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual basis for the claim . . . ." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Because this claim alleges no facts to support a claim of retaliation, it must be dismissed. *See id.* To the extent this claim can be construed as a procedural due process claim, it too fails to state a claim upon which relief can be granted. Assuming Plaintiff alleges a protected liberty interest, *see Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), he does not plausibly allege he was denied due process. The Fourteenth Amendment's Due Process Clause requires that prisoners appearing at a disciplinary hearing be provided 24-hours written notice of the charges against them, the right to call witnesses and present documentary evidence, the aid of a staff member or inmate in presenting a defense, an impartial tribunal, and a written statement of the basis for the tribunal's decision. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Simply alleging that he was denied the right to call witnesses, present documents or to "confront accusations" is wholly conclusory and does not state a claim upon which relief can be granted. *See Rush v. Canfield*, 649 F. App'x 70, 71 (2d Cir. 2016) (summary order) (plaintiff's assertion that he was "denied the right to call witnesses and the right to assistance, is a bare legal conclusion incapable of surviving a motion to dismiss") (citation and internal quotation marks omitted). Accordingly, Defendant's motion to dismiss Plaintiff's retaliation claims is granted and these claims are DISMISSED WITHOUT PREJUDICE.[9]

---

[9] Claims against Defendants Moore and Spangler are dismissed pursuant to under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).

### 8.  Denial of Access to Courts

Plaintiff alleges that Defendants Hembrook, Dutty, Bruen, and Clinton only provided him with less than three hours per week of access to the law library, when DOCCS' library access policy requires "a minimum of seven hours per day atlease [sic] six days per week or six hours per day, seven days per unless a written variance has been issued by DLLC." ECF No. 17 at 15. Plaintiff filed 11 grievances in response to the limitation on his library access. *Id.*

Furthermore, Defendant Bruen permitted Defendants Hembrook and Dutty to charge Plaintiff 10 cents per page for one-sided copies, and 20 cents per page for two-sided copies, instead of 15 cents per page "charged elsewhere." *Id.* Additionally, these Defendants did not reduce the cost to 5 cents per page on occasions where Plaintiff printed over 200 copies, resulting in Plaintiff incurring copy service charges in excess of $2,000. *Id.* Defendants also denied Plaintiffs notary services on numerous occasions, for which he filed grievances. *Id.* at 16. These denials resulted in the "Jan. 12, 2018 Rejection of Default Judgment due to the lack of Notary." ECF No. 17 at 16.[10]

While it is true that a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as "the Constitution requires no more than reasonable access to the courts." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

---

[10] Plaintiff's Amended Complaint contains additional allegations regarding obstruction to access to the Courts in prior cases in both state and federal courts. *See* ECF No. 17 at 15-17. The Court has considered these allegations and finds they fail to state a claim.

Thus, a plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 351-52. Taking Plaintiff's allegations as true, he has failed to offer facts to explain how a nonfrivolous legal claim has been prejudiced by Defendant's conduct. *See Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). The Court has no additional facts by which to evaluate the conclusory statement that Plaintiff filed a default judgment motion in some litigation that was denied due to lack of access to a notary. Accordingly, Defendants' motion to dismiss Plaintiff's claim of denial of access to the courts is granted and this claim is DENIED WITHOUT PREJUDICE.

### 9. Denial of Dental Care

Plaintiff's denial of dental care claims fail to state a claim. The allegations are unclear, include dates from 2010 to 2016, which are likely time-barred, mention other correctional facilities at which Plaintiff has been housed prior to Attica, and do not name a single Defendant involved in the alleged denial of care. Accordingly, Defendants motion to dismiss these claims is granted and these claims are DISMISSED WITHOUT PREJUDICE.

### 10. Second-Hand Smoking Exposure

Plaintiff alleges that New York State's Open-Air-Law is a policy that is "supposed to be enforced in all . . . state buildings, including Correctional Facilities." ECF No. 17 at 22. Plaintiff alleges that, despite this policy, Defendant Anthony Annucci, Acting Commissioner, DOCCS "continue[s] the practice of allowing smokers, both staff and [i]nmates alike to expose non-smokers to their habit, . . . causing COPD and CHD in Plaintiff who over the years, repeatedly complained about being expo[sed] to Second-Hand-Passive Smoking." *Id.*

20

"[P]rison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment." *Davidson v. Desai*, No. 03-CV-121S, 2019 WL 125999, at *25 (W.D.N.Y. 2019). "[T]he Eighth Amendment does not categorically protect an inmate from any exposure to second-hand smoke," *Baker v. Moore*, No. 3:16-cv-02005 (JAM), 2016 WL 7493956, at *2 (D. Conn. Dec. 30, 2016), but "[e]xposure to secondhand smoke can give rise to an Eighth Amendment violation," where "the exposure created an 'unreasonable risk of serious damage' to inmates' future health, and [] prison officials were deliberately indifferent to that risk." *Jones v. Goord*, 435 F. Supp. 2d 221, 249 (S.D.N.Y. 2006) (*quoting Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Courts examining claims of second-hand smoke exposure differentiate between claims of present and future harm caused by exposure. *Johnson v. Fischer*, No. 9:12–CV–0210 (DNH/TWD), 2015 WL 670429, *27 (N.D.N.Y. Feb. 17, 2015).

Here, Plaintiff alleges he is suffering from Chronic Obstructive Pulmonary Disease ("COPD") and Coronary Heart Disease ("CHD") caused by exposure to second-hand smoke and, therefore, the Court analyzes this claim as one alleging present harm. These claims, like other Eighth Amendment claims, are analyzed under the "deliberate indifference" standard set out in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Grayson*, 2018 WL 6933296, at *8.

As it did in its review of Plaintiff's initial Complaint, the Court finds that, at this stage in the litigation, Plaintiff's allegations that he suffers from COPD and CHD sufficiently allege a serious medical need. *See Hobson v. Fischer*, No. 10 Civ. 5512(SAS), 2011 WL 891314, at *5 (S.D.N.Y. Mar. 14, 2011) (COPD found sufficiently serious to support an Eighth Amendment claim at motion to dismiss stage); *Reid v. Goord*, No. 04-CV-00883 (M), 2010 WL 1407988, at *4-5 (W.D.N.Y. Mar. 30, 2010) (same)

Allegations regarding the subjective component, however, are lacking and the same flaw is present as in Plaintiff's initial Complaint. Plaintiff alleges only that Acting Commissioner Annucci "continue[s] the practice of allowing smokers, both staff and [i]nmates alike to expose non-smokers to their habit, . . . causing COPD and CHD in Plaintiff who over the years, repeatedly complained about being expo[sed] to Second-Hand-Passive Smoking." Under the subjective component, "the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 99 F.3d at 553 (internal quotation marks and citations omitted). The required state of mind, equivalent to criminal recklessness, is that the official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837); *cf. Helling*, 509 U.S. at 36 ("[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct . . . .").

Plaintiff's allegation that Defendant Annucci did not enforce the non-smoking policy within DOCCS facilities, is wholly conclusory and unsupported by any facts that Annucci knew of and disregarded an excessive risk of second-hand exposure to Plaintiff.

Plaintiff's Amended Complaint cites a grievance number in which he "attack[ed] DOCCS' Policy" regarding second-hand smoke exposure and alleges that he "repeatedly complained" about being exposed to second-hand smoke. However, Plaintiff fails to establish the personal involvement of Defendant Annucci. In other words, the Amended Complaint fails to establish that Annucci had notice of Plaintiff's grievance, or other complaints about second-hand smoke exposure, and failed to act to correct on ongoing constitutional violation. *See Colon*, 58 F.3d at

873 (the defendant may be liable if, after being informed of the violation through a report or appeal, he failed to remedy the wrong).

Accordingly, Plaintiff has not alleged an Eighth Amendment violation against Defendant Annucci related to second-hand smoke exposure. Defendants' motion to dismiss this claim is granted and the claim is DISMISSED WITHOUT PREJUDICE.[11]

### 11. Use of Soy Products in Alternative Meal

Plaintiff is a practicing Shi'a Ithna Asheri Muslim. ECF No. 17 at 22. Based on the tenets of his faith, he may not "eat non-Halal meats or fish[]," and any meat or fish Plaintiff does consume "can not be killed by non-muslims." *Id.* Plaintiff alleges that DOCCS, and specifically Defendant Christine Olney, Director of Nutritional Services, has available a halal chicken patty that would comply with these dietary requirements. However, Olney "would not substitute [the halal chicken patty] with [t]una, soy and meats, for [M]uslim population."[12] *Id.* at 23. Plaintiff filed a grievance related to the fact that Olney denied his request to give him a halal chicken patty instead of tuna and instead provided him with food from the Orthodox Union. *Id.* at 22-23. In response to Plaintiff's request, Olney wrote: "In consultation with the Office of Ministerial Family and Volunteer Services and the appropriate religious authority . . . there is no tenet forbidding Muslims from eating tuna fish." *Id.* at 24. However, this consultation "did not include Shi'a Ithna Asheri Authority." ECF No. 17 at 24.

---

[11] Plaintiff's Amended Complaint, ECF No. 17 at 30, alleges that Defendants Morley, Noeth, Williams, Graf, and Schunk violated New York's Open Air Law and "contribut[ed] to Plaintiff be[ing] diagnose[d] with COPD and CHD due to second-hand-smoke." However, the Amended Complaint does not contain any further details regarding the involvement of these Defendants with respect to this alleged harm. Therefore, it fails to state a claim as to these Defendants as well.

[12] The Amended Complaint is unclear as to which defendant(s) Plaintiff is bringing this claim, *see* ECF No. 17 at 23, but the Court construes this claim against Olney based on the context of this section of the Amended Complaint.

Defendant Olney's failure to provide Plaintiff with religious compliant alternatives, such as the halal chicken patty, resulted in Plaintiff eating too much soy. *Id.* at 22. This soy intake damaged Plaintiff's health by increasing his heart attack risk. *Id.* at 23. Defendant Olney "knew or should have known of the danger of eating too much soy." *Id.*

### i.      First Amendment

The Free Exercise Clause of the First Amendment, which protects the free exercise of religion, extends to prisoners and includes a right to meals that comport with religious requirements. *Ford v. McGinnis*, 352 F.3d 582, 588, 597 (2d Cir. 2003); *see also McEachin*, 357 F.3d at 203-04. A claim under the Free Exercise Clause requires that "a plaintiff . . . show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015) (summary order). The courts should not "try to judge the significance of particular devotional obligations to an observant practitioner of faith." *McEachin*, 357 F.3d at 201. "Rather, a court should consider whether the plaintiff has 'demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.'" *DeJesus v. Bradt*, 174 F. Supp. 3d 777, 784 (W.D.N.Y. 2016) (quoting *Ford*, 352 F.3d at 595).

"[A] substantial burden exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quotation omitted) (alteration in original). "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203; *see Ford,* 352 F.3d at 593–94 (Muslim inmate's free exercise rights substantially burdened if prison officials denied request for a meal to celebrate Eid ul-Fitr feast); *Holland v. Goord,* 758 F.3d 215, 221–22 (2d Cir. 2004) (ordering

24

Muslim inmate practicing Ramadan to drink water for a urine sample during fast substantially burdened free exercise rights); *Torres v. Aramark,* No. 14–CV–7498 (KMK), 2015 WL 9077472, at *9–10 (S.D.N.Y. Dec. 16, 2015) (Muslim plaintiff's allegations that he was forced to choose between eating nutritionally adequate meals and complying with his religious fasting requirements during Ramadan stated more than a *de minimis* violation). However, "[a]ll that is required for a prison diet not to burden an inmate's free exercise of religion is the provision of a diet sufficient to sustain the prisoner's good health without violating [his religion's] dietary laws." *Muhammad v. Warithu–Deen Umar*, 98 F. Supp. 2d 337, 344 (W.D.N.Y. 2000).

If the Plaintiff has established a substantial burden, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *K.A. v. City of New York*, 413 F. Supp. 3d 282, 295 (S.D.N.Y. 2019) (internal quotation marks omitted). "Once defendants carry this burden of production, the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* (internal quotations omitted).

Here, Plaintiff has colorably alleged that his sincerely held religious beliefs prevent him from eating a diet that includes fish or meats prepared by non-Muslims. He has alleged that the alternatives provided force him to choose between eating nutritionally adequate meals and complying with the requirements of his faith. This sufficiently alleges a First Amendment claim regarding Plaintiff's diet at the pleading stage. The burden therefore shifts to Defendants to identify a legitimate penological interest.

Defendants argue that Plaintiff has failed to adequately allege that Defendants substantially burdened his free exercise of religion (an argument that fails), ECF No. 23-2 at 9, but they present no legitimate penological interest for their failure to provide Plaintiff a diet that complies with his

beliefs. This failure is grounds for denial of a 12(b)(6) motion where Plaintiff has met his initial burden. *See K.A.*, 413 F. Supp. 3d at 296 (denying defendants' motion to dismiss plaintiff's free exercise claim, because, "[t]o date, [d]efendants present no legitimate correctional interest to warrant denying Plaintiffs' religious accommodations. Therefore, [d]efendants failed to carry its burden.") (internal quotation omitted). Accordingly, Defendants' motion to dismiss this claim is DENIED.

### ii.    Eighth Amendment

"[T]he Eighth Amendment . . . require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Couqhlin*, 725 F.2d 12, 15 (2d Cir. 1983)  (internal quotation marks omitted). Like other Eighth Amendment claims, a "plaintiff must satisfy both an objective test and a subjective test." *Jolly,* 76 F.3d at 480 (citations omitted). "[A] prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate health or safety." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer,* 511 U.S. at 834) (internal quotation marks omitted).

Plaintiff's allegations regarding Defendant Olney fail to allege that she acted, or omitted to act with a sufficiently culpable state of mind. Indeed, the only allegations regarding the subjective prong of an Eighth Amendment claim as to Olney are entirely conclusory: Defendant Olney "knew or should have known of the danger of eating too much soy." ECF No. 17 at 23. Defendants' motion to dismiss this claim is therefore granted and the claim is DISMISSED WITHOUT PREJUDICE.

26

### 12. COVID-19 Claim

Finally, Plaintiff alleges that "Defendants Morley, Annucci, [and] Noeth are not taking any preventive steps to prevent the wide-spread of COVID-19, among the most vulnerable population over 65 years old, with underlying medical conditions like Heart Disease." ECF No. 17 at 25. Defendants have moved to dismiss this claim, ECF No. 23-2 at 16-22, citing numerous safety measures undertaken by Attica in response to the COVID-19 Pandemic.

As discussed above, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard. "It is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death[.]" *Petitpas v. Griffin*, No. 3:20-cv-00769 (JAM), 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020) (citation and internal quotation marks omitted). However, Plaintiff's conclusory allegations fail to allege the subjective component of an Eighth Amendment claim and contain no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed. Allegations of such awareness is necessary to sufficiently plead that these Defendants "acted recklessly despite knowing the substantial risk that COVID-19 posed to [McFadden] and other inmates." *Cf. id.* at *7 (allegations that Warden "was aware of some inmates' and officers' refusal to wear masks as required by DOC policy and did not take steps to protect inmates during an outbreak are sufficient for initial pleading purposes."). Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim regarding COVID-19 preventative measures is granted and this claim is DISMISSED WITHOUT PREJUDICE.

## IV.    Plaintiff's Motions for Injunctive Relief

Plaintiff filed a Motion for Temporary Restraining Order regarding COVID-19, ECF No. 15, and a Motion for Temporary Restraining Order regarding retaliation, ECF No. 21. Preliminary injunctive relief is intended to "prevent irreparable harm until the court has an opportunity to rule on the lawsuit['s] merits." *Gully v. Ogondo*, Nos. 3:19-cv-612 (SRU), 2020 WL 1863276, at *2 (D. Conn. April 13, 2020).

Where a court grants a defendant's motions to dismiss a plaintiff's underlying claim related to injunctive relief, a "plaintiff's motions for injunctive relief will be denied as moot." *Troeger v. Ellenville Cent. School Dist.*, No. 1:12–cv–1882 (DNH/CFH), 2014 WL 1302051, at *6 (N.D.N.Y. Mar. 31, 2014); *see also Steinmetz v. Cabrera*, No. 17-CV-1000, 2018 WL 671282, at *2 (W.D.N.Y. Jan. 30, 2018) ("[B]ecause [plaintiff's] claim is dismissed, the plaintiff's letter motion for preliminary injunctive relief as to this claim . . . is denied as moot."). Therefore, because the underlying claims supporting Plaintiff's motions for injunctive relief have been dismissed, Plaintiff's Motion for Temporary Restraining Order as to COVID-19, ECF No. 15, and Motion for Temporary Restraining Order regarding retaliation, ECF No. 21, are DENIED AS MOOT.

## V.    Plaintiff's Motion for Summary Judgment

The Court turns next to Plaintiff's Motion for Summary Judgment, ECF No. 37. While Federal Rule of Civil Procedure 56 does not strictly prohibit filing motions for summary judgment before an answer is filed and discovery is conducted, such action is reserved for "the rarest of cases," *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000), such as, for example, where the case presents a pure question of law. *See, e.g., Chachkes v. David*, No. 20-cv-2879 (LJL), 2021 U.S. Dist. LEXIS 5652, at *18 (S.D.N.Y. Jan. 12, 2021).

Here, the Court finds that summary judgment is premature and Plaintiff's motion is therefore DENIED WITHOUT PREJUDICE. *See, e.g., Sanchez v. Nassau Cty.*, No. CV 17-7335 (JFB) (AKT), 2019 U.S. Dist. LEXIS 34160, at *12 (E.D.N.Y. Feb. 28, 2019) (denying *pro se* motion for summary judgment as premature in similar circumstances); *Turner v. Correct Care Sols.*, No. 18 CV 3370 (VB), 2019 U.S. Dist. LEXIS 38712, at *2 n.4 (S.D.N.Y. Mar. 11, 2019) (denying *pro se* motion for summary judgment as premature without prejudice to refile after discovery).

## VI.     Plaintiff's Motion to Consolidate Cases

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). "The trial court has broad discretion to determine whether consolidation is appropriate." *Id.*

On January 21, 2021, Plaintiff filed a Motion to Consolidate, ECF No. 38, in which he seeks to consolidate this action with another pending action (16-CV-6105-FPG) he has before this Court pursuant to Federal Rule of Civil Procedure 42(a). Plaintiff has moved to amend his Complaint in 16-CV-6105 and has filed a motion to consolidate in that case. The Court will consider the motion to consolidate in 16-CV-6105 after ruling on the motion to amend. The motion to consolidate filed in this case is therefore DENIED.

## VII.    Plaintiff's Motion to Effect Service

Plaintiff asks that the Court order the Clerk of Court "to have US Marshall to effect service of Summons and Complaint upon Defendants J. Moore and J. Spangler." ECF No. 40 at 1. Summons were returned unexecuted as to Moore and Spangler, ECF No. 27, and the Attorney General's Office has informed the Court that attempts to locate these individuals have been

unsuccessful. ECF No. 23-1 at 3. As discussed above, the Court dismissed Plaintiff's claims against Defendants Moore and Spangler pursuant to under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). Therefore, this motion is DENIED AS MOOT.

**VIII.   Plaintiff's Motion to Compel Response to *Valentin* Order**

Finally, Plaintiff seeks an order compelling the Attorney General's Office to respond to the Court's *Valentin* order regarding Defendants Sgt. S. and Nurse M.Z. ECF No. 39. The allegations in the Amended Complaint as to Nurse M.Z. are wholly conclusory. While Nurse M.Z. is listed in Plaintiff's enumerated causes of action, ECF No. 17 at 29-30, Nurse M.Z. is not mentioned in any of the substantive allegations in Plaintiff's Amended Complaint that support his claims. Accordingly, the Court DISMISSES WITHOUT PREJUDICE all claims against Nurse M.Z. pursuant to under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's motion to compel the Attorney General's Office to further respond to the Court's *Valentin* order as to Nurse M.Z. is DENIED AS MOOT.

With respect to Defendant Sgt. S., the Attorney General's Office has indicated that "[u]pon information and belief, . . . Sgt. 'S' [was] not served and [has] not been identified." ECF No. 23-1 at 3. As discussed above, Plaintiff has adequately stated claims against Sgt. S. Therefore, Plaintiff's motion is GRANTED insofar as the Court directs the New York State Attorney General's Office to attempt once again to ascertain the full name of Defendant Sgt. S. and provide an address at which he or she can be served with the Summons and Amended Complaint. The Attorney General need not undertake to defend or indemnify this Defendant at this juncture; this order merely provides a means by which Plaintiff may properly serve them.

The Attorney General must provide the requisite information to the Court by March 22, 2021. Once this information is provided, the Clerk of Court will amend the summons and cause the U.S. Marshals to serve this Defendant.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss, ECF No. 23, is GRANTED IN PART and DENIED IN PART.

The following claims may proceed: (1) Deliberate indifference claims against Defendants Graf, Schunk, Bonning, and Williams regarding the failure to replace Pacemaker batteries within 5 years; (2) Deliberate indifference claims against Defendant Sgt. S. regarding forced discharge from the hospital; (3) Excessive force claims against Defendant Sgt. S. regarding the use of restraints; and (4) First Amendment claim against Defendant Olney regarding a diet that adequately complies with Plaintiff's religious beliefs. All other claims are DISMISSED WITHOUT PREJUDICE, except for Plaintiff's claims related to the failure to return him to ECMC Cardiology for a Pacemaker follow-up appointment in 2012 which is DISMISSED WITH PREJUDICE.

"Pursuant to the policy of providing *pro se* litigants with 'every opportunity' to put forth a valid claim," *Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 457 (W.D.N.Y. 2017), Plaintiff is granted leave to file a second amended complaint as to the claims dismissed without prejudice **within thirty (30) days** of the filing of this Decision and Order. If Plaintiff does not file a second amended complaint, those claims will be dismissed with prejudice. Plaintiff is advised that a second amended complaint would **completely replace** all prior complaints in this action, and thus it would "render[ ] [any prior complaint] of no legal effect." *Id.* (citation omitted). Therefore, Plaintiff's second amended complaint must include all necessary allegations so that it may stand

31

alone as the sole complaint in this action. If Plaintiff does not file a second amended complaint, the case will proceed against Defendants Graf, Schunk, Bonning, Williams, Sgt. S. and Olney with the causes of actions enumerated at the outset of this section.

Plaintiff's Motions, ECF Nos. 15, 21, 30, 33, 37, 38, and 40 are DENIED. Plaintiff's Motion to Compel, ECF No. 39, is GRANTED IN PART and DENIED IN PART.

The New York State Attorney General's Office is directed to ascertain the full name of Defendant Sgt. S. or "__ S, Sergeant ACF-DOCCS" and provide an address at which he or she can be served with the Summons and Amended Complaint. The Attorney General must provide the requisite information to the Court by March 22, 2021.

The New York State Attorney General's Office is directed to file via the electronic case docket a copy of the September 10, 2020 Declaration in opposition to Plaintiff's Motion for Default Judgment as soon as practicable.

SO ORDERED.

_____
Frank P. Geraci, Jr.
Chief United States District Judge


DATED:        February 9, 2021
              Rochester, NY