UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REGINALD GHAFFAAR MCFADDEN,

                                            Plaintiff                Case # 18-CV-6684-FPG

v.

                                                   DECISION AND ORDER

ANNUCCI, et al.,

                                     Defendants.

## INTRODUCTION

*Pro se* Plaintiff, Reginald Ghaffaar McFadden, is a prisoner currently confined at the Wende Correctional Facility and previously confined at the Attica Correctional Facility ("Attica"). Plaintiff's Second Amended Complaint (the "SAC") presents numerous claims arising under 42 U.S.C. § 1983. ECF No. 47.

Currently before the Court are (1) Defendants' Second Motion to Dismiss for Failure to State a Claim, ECF No. 49, and Defendant Stephen Maher's motion for joinder to such motion, ECF No. 61, and (2) Plaintiff's Motion for Supplemental Pleadings, ECF No. 59. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss and GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Supplemental Pleadings.

## PROCEDURAL HISTORY[1]

Plaintiff commenced this action on September 25, 2018 when he filed his Complaint, ECF No. 1. Plaintiff also sought permission to proceed *in forma pauperis*. Initially, the Court denied Plaintiff permission to proceed *in forma pauperis* under 28 U.S.C. § 1915(g) because it found that

---

[1] The Court notes that this case, while not yet in the discovery phase, involves a lengthy procedural history. For purposes of brevity the Court incorporates by reference the procedural history set forth in the Decision and Order dated February 9, 2021, ECF No. 42.

Plaintiff had garnered three or more strikes and did not allege that he was in imminent danger of serious physical injury.  ECF No. 8.  Plaintiff appealed, and the United States Court of Appeals for the Second Circuit vacated the order and remanded this action because it determined that Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury.  ECF No. 13.

On May 19, 2020, the Court granted Plaintiff permission to proceed *in forma pauperis* and screened the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  ECF No. 14.  In its Decision and Order screening the Complaint, the Court, *inter alia*, dismissed all claims and granted leave to file an amended complaint by July 15, 2020.  The Court made clear that an amended complaint would "**completely replace** the prior complaint" in the action.  *Id.* at 19.

On June 3, 2020, Plaintiff filed a Motion for Temporary Restraining Order, ECF No. 15, with an attached amended complaint.  In response to a Court order directing the Amended Complaint be docketed separately from the Temporary Restraining Order and copies of the Summons, Amended Complaint, and motion papers be served, summons were issued on June 9, 2020, and mailed to the U.S. Marshals Service in Buffalo for service, as to 17 Defendants: Anthony J. Annucci, Jr., Deborah Bonning, Kevin Bruen, J. Clinton, Christopher Dutty, Deborah Graf, Vincent Hawley, Brian Hembrook, Sandra Michalek, J. Moore, John Morley, MD, Joseph Noeth, Christina Olney, Alicia Schunk, J. Spangler, D. Williams, and Luci Wilson.  *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, June 9, 2020 Docket Entry.

On July 31, 2020, executed summons were returned for 13 Defendants: Anthony J. Annucci, Jr, Deborah Bonning, Kevin Bruen, J. Clinton, Christopher Dutty, Deborah Graf, Vincent

Hawley, Brian Hembrook, John Morley, MD, Joseph Noeth, Christina Olney, Alicia Schunk, and D. Williams.[2]  *See* ECF No. 22.

On August 17, 2020, Defendants moved to dismiss the Amended Complaint and all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 23.  In the alternative, Defendants requested an order under Federal Rule of Civil Procedure 12(e) for a more definite statement.  *Id.*

On August 27, 2020, Plaintiff responded in opposition to Defendant's motion to dismiss, ECF No. 29, and filed a Motion for Default Judgment.  ECF No. 30.  On September 8, 2020, Plaintiff filed a "Supplemental Submission In Support of Denial of Defendant's Motion to Dismiss and Granting Default Judgment," ECF No. 31, in which he (1) added further argument to his Motion for Default Judgment; and (2) offered to resolve this case in lieu of default judgment in exchange for "Immediate Medical Deporttion [sic] Out Of The United States Forever" to "the Holy City Of Najaf, Iraq."  ECF No. 31 at 3.

On September 21, 2020, Plaintiff filed (1) a reply to Defendants' opposition to his default judgment motion, ECF No. 32; and (2) a Motion to Strike Pleadings, ECF Nos. 33, 34.  On October 8, 2020, Plaintiff filed a sur-reply to Defendants' motion to dismiss, ECF No. 35, without seeking leave of Court.  On January 5, 2021, Plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) or (d).  ECF No. 37.

On February 1, 2021, Plaintiff filed two additional motions: (1) a Motion to Compel "the Defendants' counsel, AAG Matthew D. Brown, to comply with this Court's Order that Ordered

---

[2] An executed summons was returned as to Defendant Sandra Michalek on August 26, 2020.  ECF No. 26.  On September 1, 2020, unexecuted summons were returned as to Defendants J. Moore and J. Spangler, indicating that these individuals could not be located.  ECF No. 27.  A summons was not returned as to Defendant Luci Wilson.  *See McFadden v. Koengismann, et al.*, 6:18-cv-6684-FPG, Docket.

Defendants to identify the names, titles of defendants" Sgt. S. and Nurse M.Z.; and (2) a Motion to Effect Service on Defendants J. Moore and J. Spangler.  ECF Nos. 39, 40.  On February 5, 2021, Defendants filed a response in opposition to Plaintiff's summary judgment motion and requested that the Court bar Plaintiff from filing additional motions until the Court rules on the pending motions.  ECF No. 41 at 6.

On February 9, 2021, the Court issued a Decision and Order granting in part and denying in part Defendants' Motion to Dismiss, ECF No. 42.  In particular, the Court (1) **dismissed with prejudice** Plaintiff's claim regarding the failure to return Plaintiff to Erie County Medical Center cardiology in accordance with discharge instructions; (2) **dismissed without prejudice** Plaintiff's claims related to the removal of a left arm brace and/or damages to Plaintiff's left arm for handcuffing; (3) **denied Defendants' motion to dismiss** in regards to Plaintiff's claim concerning the failure to replace pacemaker batteries within five years; (4) **denied Defendants' motion to dismiss** Plaintiff's excessive force claim concerning the use of restraints; (5) **dismissed without prejudice** Plaintiff's denial of medical care claim concerning a wrist injury; (6) **dismissed without prejudice** Plaintiff's denial of medical care claim regarding a left ankle injury; (7) **dismissed without prejudice** Plaintiff's retaliation claim based on a cell search and disciplinary hearing; (8) **dismissed without prejudice** Plaintiff's denial of access to courts claim; (9) **dismissed without prejudice** Plaintiff's denial of dental care claims; (10) **dismissed without prejudice** Plaintiff's second hand smoke exposure claim; (11) **denied Defendants' motion to dismiss** Plaintiff's first amendment claim concerning the use of soy products in alternative meals and **dismissed without prejudice** Plaintiff's eighth amendment claim regarding the same; and (12) **dismissed without prejudice** Plaintiff's eighth amendment claim regarding COVID procedures.  The Court again made clear that a second amended complaint "would **completely replace** all prior complaints in

4

this action, and thus it would 'render[ ] [any prior complaint] of no legal effect.'"  ECF No. 42 at

31 (quoting *Lightner v. Wenderlich*, 271 F. Supp. 3d 444, 457 (W.D.N.Y. 2017)).

In that same Decision and Order, the Court denied as moot Plaintiff's motion for a

temporary restraining order, ECF Nos. 15, 21, denied Plaintiff's motion for default judgment, ECF

No. 30, denied Plaintiff's motion to strike pleadings, ECF No. 33, denied without prejudice

Plaintiff's motion for summary judgment, ECF No. 37, denied Plaintiff's motion for consolidation,

ECF No. 38, granted in part and denied in part Plaintiff's motion to compel, ECF No. 39, and

denied as moot Plaintiff's motion to effectuate service, ECF No. 40.

Following the Court's Order, Defendants filed an Answer, ECF No. 46.  Soon thereafter,

Plaintiff filed his SAC, ECF No. 47, which Defendants' now move to dismiss, ECF No. 49, 61.

Plaintiff filed a response on March 19, 2021, ECF No. 52, and Defendants replied on March 29,

2021, ECF No. 53.  Plaintiff then filed a Motion for Supplemental Pleadings on April 7, 2021.

ECF No. 59.

In the time since Defendants' motions to dismiss and Plaintiff's motion for supplemental

pleadings were filed, Plaintiff has filed numerous letters, requests for the appointment of counsel

and motions for temporary restraining orders.  *See, e.g.*, ECF Nos. 60, 64, 67, 69, 71, 72, 76, 80,

82, 85, 87.  The Court has addressed each such request in the interim and has directed Plaintiff to

refrain from making additional requests until the Court renders a decision on the instant motion to

dismiss.  ECF No. 62.

## I.    Defendants' Motion to Dismiss

### A.  Legal Standard

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) when it states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A

claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Although a court "is generally limited to the [complaint] when considering" a motion to dismiss, it may also consider "matters of which judicial notice may be taken," including public records evidencing an individual's conviction. *Magnotta v. Putnam Cty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *3 (S.D.N.Y. Feb. 24, 2014).

Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

### B. Analysis

Plaintiff's SAC and subsequent filings in relation to the motion to dismiss are difficult to understand given the number of filings that have occurred. Nonetheless, the Court has undertaken the task of liberally construing Plaintiff's SAC and, in doing so, has identified eight claims, or groups of claims. The Court considers each in turn below. The factual allegations are drawn solely from Plaintiff's SAC, ECF No. 47, and are accepted as true with all inferences drawn in Plaintiff's favor, as required at this stage of the litigation.

    1.  **Defendants' Failure to Comply with Discharge Instructions Regarding Plaintiff's Return to ECMC Cardiology, the Removal of the Left Arm Brace and Injury to the Left Arm**

Plaintiff asserts that on August 7, 2012, he was taken by ambulance to Erie County Medical Center ("ECMC") and admitted to the hospital.  ECF No. 47 at 7-8.[3]  Upon discharge, Plaintiff was to be "prepped" for the implantation of a pacemaker.  On August 20, 2012, Plaintiff's procedure was complete and he was discharged on August 21, 2012, with instructions to not lift his arm for six weeks, resume meds, and for a follow up appointment in three months.  *Id.* at 9.

However, according to Plaintiff, Defendants Graf, Bonning, Schuck and Hawley ignored those instructions.  It appears from the face of Plaintiff's SAC that Defendants ignored the instruction not to remove his arm brace or lift his arm and during the mandatory handcuffing process in the SHU, he was electrically shocked due to leads to the pacemaker device being "compromised".  *Id.* at 9-10.  Moreover, Plaintiff was not taken for a follow up on the pacemaker until February 2, 2015—well beyond the three-month period.  *Id.* at 10.

As stated in this Court's prior Decision and Order, to the extent Plaintiff is bringing a claim that he was not returned for cardiology follow-up in accordance with the discharge instructions, that claim has already been dismissed with prejudice in another action he brought before this Court.  *See McFadden v. Fischer*, 13-CV-559-FPG, 16-CV-6105-FPG, 2016 WL 5661824, at *15 (W.D.N.Y. Sept. 30, 2016).  Therefore, any claim in the SAC related to a failure to return Plaintiff to ECMC cardiology in accordance with the discharge instructions is DISMISSED WITH PREJUDICE.

Additionally, Plaintiff's allegations underpinning his Eighth Amendment deliberate indifference claim regarding the improper removal of his arm brace and moving of his arm, are

---

[3] Citations to pages in Plaintiff's SAC refer to the pagination created by the CM/ECF system.

again insufficient to state a claim.[4]  Eighth Amendment claims are analyzed under the "deliberate indifference" standard set out in *Estelle v. Gamble*, 429 U.S. 97 (1976); *Grayson v. Courtney*, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296, at *8 (N.D.N.Y. Dec. 3, 2018).  This standard has both objective and subjective components.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Under the objective component, the alleged medical need or condition must be "sufficiently serious."  *Id.*  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Id.*  "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted).

The use of force is a violation of the Eighth Amendment when it is applied in a "malicious[] and sadistical[] [manner] to cause harm," rather than "in a good-faith effort to maintain or restore discipline[.]"  *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992).  To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations.  *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

With respect to the removal of the left arm brace, Plaintiff's allegations are devoid of the "sufficiently serious" medical need, in that, there is no indication that the removal of the brace resulted in "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *See Hathaway*, 37 F.3d at 66.  As for the subsequent placement of Plaintiff in handcuffs at the SHU—which Plaintiff alleges caused him to be shocked and lose consciousness—Plaintiff again

---

[4] Defendants additionally argue that Plaintiff's claims concerning the removal of the arm brace and handcuffing are time barred by the statute of limitations.  ECF No. 49-2 at 11.  While this appears to be true based on the dates alleged in Plaintiff's SAC, the Court makes no determination as to the timeliness of this claim.

fails to name which Defendant or Defendants engaged in the handcuffing and thus, fails to state a claim upon which relief can be granted.  Because the Court has previously provided Plaintiff an opportunity to amend to remedy each of these deficiencies and Plaintiff has not done so, the claim is DISMISSED WITH PREJUDICE.  *Liner v. Goord*, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000) ("When a plaintiff does not correct the defects in an initial pleading through the filing of a more detailed amended complaint, the amended complaint may be dismissed with prejudice.") (collecting cases).

### 2.  Denial of Medical Care Regarding Wrist Injury

Plaintiff asserts that on April 17, 2018, while being escorted to a medical appointment, Defendant Sutter applied handcuffs too tightly, causing Plaintiff's circulation to be cut off and leaving a "deep cut" and "marks."  ECF No. 47 at 14-15.  Subsequently, on April 18, 2018 and April 20, 2018, when Defendant Hawley was the treating nurse, Plaintiff requested sick calls.  *Id.* at 16.  Records from those dates indicate left wrist discomfort, numb thumb and that the injury was caused by being handcuffed too tight.  *Id.*  Hawley referred Plaintiff to Defendant Schunk and Defendant Graf.  *Id.*  Defendant Bonning followed up that same day.  *Id.*

Plaintiff alleges that on September 17, 2019, Defendant Graf made a referral to Defendant Wilson and to physical therapist, Defendant Fink.  *Id.*  On October 22, 2019, Plaintiff states he had a conflict with Physical Therapy and requested it be rescheduled.  *Id.*  It was never followed up by providers to determine whether there was additional need for physical therapy.  *Id.* at 17.

As addressed above, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard.  Plaintiff fails to plausibly allege both components of this standard.  First, there are no amplifying details regarding his wrist injury that suggest it is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway*, 37

F.3d at 66.  Second, the facts as alleged show Plaintiff was consistently evaluated and referred to medical providers.  While Plaintiff alleges that there was no additional follow up after his conflict in October 2019, he does not assert any subsequent injury or pain.  This belies a finding of deliberate indifference.

Again, because this Court has previously provided Plaintiff an opportunity to amend to remedy these deficiencies and he fails to do so, the claim is DISMISSED WITH PREJUDICE.

### 3.  Denial of Medical Care Regarding Left Ankle Injury

Next, Plaintiff asserts that Defendants Hawley, Bonning, Graf, Schunk, and Wilson, decided that a specialist was not warranted for an alleged 2007 injury.  ECF No. 47 at 19.  He further provides that he did not receive the physical therapy "ordered" until January 2019 and that little was done in the meantime.  *Id.*  Plaintiff states in a conclusory manner that this denial of therapy shows "a deliberate indifference to a serious medical need."  *Id.* at 20.

Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard.  Plaintiff fails to plausibly allege both components of this standard.  First, there are no amplifying details regarding his ankle injury that suggest it is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway*, 37 F.3d at 66.  Second, the facts as alleged do not demonstrate that Defendants had actual knowledge of a serious medical need but were deliberately indifferent.  This Court previously indicated that without additional allegations to establish this claim, it was insufficient to survive a Rule 12(b)(6) motion to dismiss.  The same is true here, and the claim is DISMISSED WITH PREJUDICE.

### 4.  Retaliation: Cell Search and Disciplinary Hearing

Plaintiff asserts that on February 18, 2018, Defendant Maher's two deputies, Defendants Moore and Spangler, targeted Plaintiff who refused to cooperate without a lawyer in answering

questions concerning an ongoing investigation. ECF No. 47 at 20. Due to Plaintiff's lack of response, Defendants conducted a cell search and removed all of Plaintiff's property, returning everything "except over 200 legal documents," and then filed a false misbehavior report against Plaintiff. *Id.*

Defendant Noeth assigned Defendant Clinton to handle the disciplinary hearing. Defendant Clinton refused to allow witnesses and ultimately found Plaintiff guilty and imposed sanctions on him. *Id.* at 20-21. The sanctions imposed interfered with Plaintiff's Hep-C treatment and access to the Law Library. *Id.* at 21.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted). Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d. Cir. 1995) ("[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care") (citation omitted). Thus, "a complaint which alleges retaliation in wholly conclusory terms may

safely be dismissed on the pleadings alone [because i]n such a case, the prisoner has no factual

basis for the claim . . . ." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Because this claim alleges no facts to support a claim of retaliation, it must be dismissed.

*See id.* To the extent this claim can be construed as a procedural due process claim, it too fails to

state a claim upon which relief can be granted. Assuming Plaintiff alleges a protected liberty

interest, *see Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), he does not plausibly allege he

was denied due process. The Fourteenth Amendment's Due Process Clause requires that prisoners

appearing at a disciplinary hearing be provided 24-hours written notice of the charges against them,

the right to call witnesses and present documentary evidence, the aid of a staff member or inmate

in presenting a defense, an impartial tribunal, and a written statement of the basis for the tribunal's

decision. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). However, simply alleging that

he was denied the right to call witnesses at a disciplinary hearing is conclusory and does not state

a claim upon which relief can be granted. *See Rush v. Canfield*, 649 F. App'x 70, 71 (2d Cir. 2016)

(summary order) (plaintiff's assertion that he was "denied the right to call witnesses and the right

to assistance, is a bare legal conclusion incapable of surviving a motion to dismiss") (citation and

internal quotation marks omitted). Because this is the same grounds upon which the Court

previously dismissed this claim, the claim is DISMISSED WITH PREJUDICE.

### 5. Denial of Access to the Courts

Plaintiff asserts that Defendant Hembrook has "a long history of obstructing access to

court," including by (1) refusing to act as a notary; (2) deliberate defacing legal documents; (3)

intentionally causing delays in motions by rejecting notarizations; and (4) making false statements

that Plaintiff posed as a threat to law clerks. ECF No. 47 at 21. Such abuse is, according to

Plaintiff, "encouraged" by Defendants Noeth, Clinton and Bruen. *Id.* at 22. It appears that these

issues resulted in a delay in a New York State Appellate Division matter as well as in rejections of documents by courts. *Id.* at 21-22.

While it is true that a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the mere limitation of access to legal materials, without more, does not state a constitutional claim, as "the Constitution requires no more than reasonable access to the courts." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

Therefore, as set forth in this Court's prior Order, Plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis*, 518 U.S. at 352-53. Taking Plaintiff's allegations as true, he has failed to offer facts to explain how a nonfrivolous legal claim has been prejudiced by Defendant's conduct. *See Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). The Court has no additional facts by which to evaluate the conclusory statements that Plaintiff's appeal was extended, default was delayed, and Plaintiff had to write an affirmation after a court's rejection of a document. ECF No. 47 at 21-22. Even so, these allegations do not demonstrate that any of Plaintiff's legal claims were prejudiced. Accordingly, Plaintiff's denial of access to the courts claim is DISMISSED WITH PREJUDICE.

### 6.   Denial of Dental Care

Plaintiff asserts that Defendant Tenbrink failed to follow up on Plaintiff's 2010 Dental Emergency Sick Call and in 2013, failed to thoroughly examine the condition of Plaintiff's teeth which would have prevented decay and tooth loss.  ECF No. 47 at 23.  Plaintiff also indicates that Defendant Tenbrink extracted "two savable teeth."  *Id.*  Aside from the likely issue with statute of limitations,[5] the facts do not sufficiently plead a claim for which Plaintiff is entitled to relief.

As discussed, Eighth Amendment claims are analyzed under the "deliberate indifference" standard.  Plaintiff fails to plausibly allege the requirements of this standard.  Specifically, there are no amplifying details regarding his dental care that suggest it is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway*, 37 F.3d at 66.  While Plaintiff alleges teeth were extracted that were savable, he does not set forth anything to suggest that the extraction caused a condition of urgency.  Nor does Plaintiff demonstrate that there was a serious medical condition which Defendant Tenbrink was aware of and disregarded.  Rather, Plaintiff indicates that after a complaint was made to the Superintendent, Defendant Tenbrink determined Plaintiff had a broken tooth, and subsequently extracted two teeth.  ECF No. 47 at 22-23.  This Court previously indicated that without additional allegations, this claim was insufficient to survive a Rule 12(b)(6) motion to dismiss.  The same is true here, and the claim is DISMISSED WITH PREJUDICE.

---

[5] Plaintiff asserts that the grievance procedure for the dental issues was not complete until January 29, 2018, ECF No. 47 at 23, referencing Grievance No. A-67711-16.  However, according to Defendants' records, that grievance was initiated on November 17, 2016.  It is unlikely that such a grievance concerned the allegations here which occurred between 2010 and 2013.  No matter, the Court is not dismissing this claim on statute of limitation grounds as the dates are unclear, but rather, for failure to sufficiently state a claim.

### 7. Second-Hand Smoking Exposure

Plaintiff alleges that New York State's Open-Air-policy is not being adequately enforced by Defendants Annucci, Noeth, or Morley. ECF No. 47 at 25. Specifically, Plaintiff states that although the policy prevents smoking inside the buildings and cells, it is rarely enforced among inmates and staff, thereby exposing Plaintiff to second-hand smoke. *Id.* As a result of this second-hand smoke, Plaintiff asserts that he is suffering from Chronic Obstructive Pulmonary Disease ("COPD") and Coronary Heart Disease ("CHD"). *Id.*

"[P]rison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment." *Davidson v. Desai*, No. 03-CV-121S, 2019 WL 125999, at *23 (W.D.N.Y. 2019). "[T]he Eighth Amendment does not categorically protect an inmate from any exposure to second-hand smoke," *Baker v. Moore*, No. 3:16-cv-02005 (JAM), 2016 WL 7493956, at *2 (D. Conn. Dec. 30, 2016), but "[e]xposure to secondhand smoke can give rise to an Eighth Amendment violation," where "the exposure created an 'unreasonable risk of serious damage' to inmates' future health, and [] prison officials were deliberately indifferent to that risk." *Jones v. Goord*, 435 F. Supp. 2d 221, 249 (S.D.N.Y. 2006) (*quoting Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Courts examining claims of second-hand smoke exposure differentiate between claims of present and future harm caused by exposure. *Johnson v. Fischer*, No. 9:12–CV–0210 (DNH/TWD), 2015 WL 670429, *27 (N.D.N.Y. Feb. 17, 2015).

As in its review of Plaintiff's initial Complaint and Plaintiff's Amended Complaint, the Court finds that, at this stage in the litigation, Plaintiff's allegations that he suffers from COPD and CHD sufficiently allege a serious medical need. *See Hobson v. Fischer*, No. 10 Civ. 5512(SAS), 2011 WL 891314, at *5 (S.D.N.Y. Mar. 14, 2011) (COPD found sufficiently serious

to support an Eighth Amendment claim at motion to dismiss stage); *Reid v. Goord*, No. 04-CV-00883 (M), 2010 WL 1407988, at *4-5 (W.D.N.Y. Mar. 30, 2010) (same).

Allegations regarding the subjective component, however, are lacking and the same flaw is present as was in Plaintiff's initial Complaint and Amended Complaint.  Plaintiff alleges only that "Defendants Annucci, Noeth, Morley, fail[] to enforce NYS Open-Air-policy for profit, exposing [Plaintiff] to the second hand smoking of both inmates and staff.  ECF No. 47 at 24-25.  Under the subjective component, "the charged official must act with a sufficiently culpable state of mind."  *Hathaway*, 37 F.3d at 66.  The required state of mind, equivalent to criminal recklessness, is that the official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's allegations that Defendants Annucci, Noeth, and Morely did not enforce the non-smoking policy within DOCCS facilities and that they knew of the failure to enforce the policy, is wholly conclusory and unsupported by any facts that the Defendants knew of and disregarded an excessive risk of second-hand exposure to Plaintiff.

Plaintiff's SAC cites a grievance in which he "challeng[ed] exposure to Second Hand Smoking" which contributed to his development of COPD and CHD, however, Plaintiff fails to establish the personal involvement of Defendants.  In other words, the SAC fails to establish that the named Defendants had notice of Plaintiff's grievance, or other complaints about second-hand smoke exposure, and failed to act to correct on ongoing constitutional violation.  *See Colon*, 58 F.3d at 873 (the defendant may be liable if, after being informed of the violation through a report or appeal, he failed to remedy the wrong).

16

Accordingly, Plaintiff has not alleged an Eighth Amendment violation against Defendants Annucci, Noeth and Morely related to second-hand smoke exposure.  Because Plaintiff has had various opportunities to remedy the inadequacies of this claim and he continues to fail to do so, the claim is DISMISSED WITH PREJUDICE.

### 8. COVID-19 Claim

Lastly, Plaintiff alleges that Defendants Annuci, Morley, and Williams are inadequately preventing the spread of COVID-19.  *See* ECF No. 47 at 26-27.

As discussed, Eighth Amendment medical care claims are analyzed under the "deliberate indifference" standard.  "It is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death[.]"  *Petitpas v. Griffin*, No. 3:20-cv-00769 (JAM), 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020) (citation and internal quotation marks omitted). Plaintiff's allegations fail to allege the subjective component of an Eighth Amendment claim and contain no amplifying details regarding the named-Defendants' awareness that COVID-19 measures are not being followed.  Rather, Plaintiff makes general allegations that the six feet apart rule are "almost never enforced," some officers take off face masks, and that staff members infected many inmates who were allowed to return to blocks and infect others.  ECF No. 47 at 26. Allegations of awareness are necessary to sufficiently plead that the Defendants "acted recklessly despite knowing the substantial risk that COVID-19 posed to [McFadden] and other inmates."  *Cf. Petitpas*, 2020 WL 6826732, at *7 (allegations that Warden "was aware of some inmates' and officers' refusal to wear masks as required by DOC policy and did not take steps to protect inmates during an outbreak are sufficient for initial pleading purposes.").  Accordingly, because Plaintiff has had multiple opportunities to sufficiently allege this claim, it is DISMISSED WITH PREJUDICE.

### 9.  Abandoned Claims

Defendants assert that by not including the following claims, Plaintiff abandoned them: (1) the First Amendment claim related to the use of soy products as alternative meals; (2) the deliberate indifference claim for failure to replace his pacemaker battery within five years; (3) denial of medical care for left ankle injury; (4) deliberate indifference for not being kept overnight at Buffalo General Medical Center on October 10, 2019; and (5) no cause of action against Christopher Duffy (sued as Christopher Dutty).[6]  After Defendants filed their motion to dismiss arguing dismissal of the above claims based on abandonment, Plaintiff filed a letter with the Court indicating that it was a mistake to omit the claims and arguing that the naming of the Defendants involved in the alleged conduct and other references to the claims effectively preserved them.

"It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).  It is also generally the circumstance that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (quotations and citations omitted), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In *Austin*, the court considered whether "by requesting leave to file an amended complaint that omits earlier alleged claims and/or defendants, a *pro se* plaintiff is deemed to have abandoned the omitted claims as well as all claims against the omitted defendants." 149 F.3d at 155.  The court held that "ordinarily it makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended

---

[6] Plaintiff agrees that Defendant Dutty/Duffy should be dismissed in this action.  ECF No. 58 at 3-4.  Therefore, Defendant Dutty/Duffy and any and all claims asserted against him are DISMISSED.

pleading is permitted by the court," *id.*, but declined to extend the rule to pro se parties.  Further, the court stated that "the question of abandonment is one of intent," and that a *pro se* plaintiff "would normally be allowed to reallege claims omitted from the second pleading once [he] had been informed that the effect of that [amended complaint] was to abandon those claims."  *Id.* at 155-56.

Here, it is clear by Plaintiff's letter, ECF No. 58, that his intention in omitting the deliberate indifference claim relating to the replacement of the pacemaker batteries within five years,[7] the excessive force claim based on the use of restraints, and the first amendment claim based on the prison's failure to provide food that complies with Plaintiff's religious beliefs, from the SAC was not to abandon the claims, but rather, was due to a mistake in believing the claims need not be replead.  Given Plaintiff's *pro se* status and the letter indicating his intention, the Court will not deem such claims abandon, but rather, construes the SAC to include those claims as set forth in the Amended Complaint.

However, Plaintiff does not attempt to replead his Eight Amendment claim concerning Plaintiff's overconsumption of soy products which damaged his health and increased his risk for hear attack, nor does Plaintiff raise such a claim in his letter.  Such a claim was previously dismissed without prejudice as Plaintiff failed to demonstrate that Defendant Olney acted or omitted to act with a sufficiently culpable state of mind.  ECF No 42 at 26.  Because Plaintiff failed to remedy such concerns, and indeed, failed to raise such a claim, the claim is deemed ABANDONED and therefore is DISMISSED WITH PREJUDICE.

---

[7] The Court previously discussed the pacemaker claim and the forced discharge claim together.  *See* ECF No. 42 at 11-14.  As such, because Plaintiff is proceeding *pro se* and the Court evaluated these issues together, the Court will not deem the forced discharge claim as abandoned despite Plaintiff's failure to mention it in either his SAC or his letter.

## II.    Plaintiff's Motion for Supplemental Pleadings

On April 7, 2021, Plaintiff filed a motion for supplemental pleadings raising additional claims which Plaintiff alleges "relate back" to the three surviving claims.[8]  Specifically, (1) the deliberate indifference claim due to the alleged failure to replace pacemaker batteries within five years and forcing Plaintiff's discharge from the hospital after the pacemaker procedure, ECF No. 59 at 1-2, (2) the excessive force claim based on restraints which cut Plaintiff's wrist and ankle, *id.* at 3, and (3) the first amendment violation based on the failure of the prison to provide proper foods in compliance with his religious beliefs, *id.* at 4-5.  It is unclear to this Court whether Plaintiff seeks to add such claims to his SAC, after recognizing he failed to include the claims in his SAC, or whether Plaintiff seeks to add such allegations to those claims already set forth in his Amended Complaint.

Because the Court has determined that Plaintiff did not intend to abandon the three claims set forth here in the filing of his SAC and has construed the SAC to include such claims from the Amended Complaint, the Court construes Plaintiff's motion to supplement as seeking to add additional factual allegations to the previously asserted claims.  Due to the confusing nature of the pleading the Court addresses each factual allegation in turn.

Plaintiff's allegations set forth under the "FAILURE To Replace Pacemaker Batteries" heading are unclear.  The first two allegations appear to relate to the excessive force claim discussed below.  Specifically, it states that on October 2, 2019, Defendant Sutter forced Plaintiff to walk in full restraints from the second floor or the prison hospital, down the steps, and a football field distance.  ECF No. 59 at 2-3.  To the extent Plaintiff seeks to ensure such an allegation is

---

[8] The Court did not enter a briefing schedule on Plaintiff's motion for supplemental pleadings.  However, Local Rule 8(b)(2)(B) provides that absent court order, opposing parties shall have fourteen days to file and serve responding papers.  Respondents did not file any memorandum in opposition here.

included in his excessive force claim, the motion is GRANTED.  Next, Plaintiff alleges that after

the procedures on October 2, 2019, Plaintiff was brought back to Attica's prison hospital and

improperly discharged.  This appears to already be set forth in Plaintiff's deliberate indifference

claim.  Therefore, to the extent Plaintiff seeks to ensure such an allegation is included in his

deliberate indifference claim, the motion is GRANTED.

Next, Plaintiff states that after experiencing shocks from the newly installed pacemaker,

he was taken back to Buffalo General Medical Care Center and placed in the intensive care unit

until he stabilized.  At that time, Plaintiff was released.  ECF No. 59 at 3.  Then, Plaintiff asserts

he was provided a follow up appointment to monitor the effects of his prescription for Amiodarone

to prevent pain and difficulty breathing, which Plaintiff asserts he complained of to Defendants

Williams and Schunk.  *Id.* at 3-4.  This appears to be a new deliberate indifference claim which

Plaintiff asserts relates back to the failure to replace the pacemaker.  However, Plaintiff in no way

establishes that the medication was related to the failure to replace the pacemaker.  Nor does

Plaintiff demonstrate that the pain and difficulty breathing experienced rose to a level of "a

condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway*, 37

F.3d at 66.  As such, Plaintiff's motion to supplement to add this claim is DENIED.

Plaintiff's first two factual allegations under the "Excessive Force" heading relate directly

to the deliberate indifference claim and state that on April 17, 2018 and October 2, 2019, Defendant

Sutter ignored policies regarding the use of restraints during an outside medical trip.  ECF No. 59

at 4.  Because such facts appear to already be set forth, Plaintiff's motion to supplement to include

these allegations is GRANTED to the extent non-material factual details have been added or

modified.  However, Plaintiff's third paragraph concerns various Defendants' failures to treat

Plaintiff's wrist and ankle injuries.  *Id.*  The Court has determined that such claims are

DISMISSED WITH PREJUDICE as Plaintiff has failed numerous times to sufficiently set forth allegations to establish the claims.  The additional statement here that Defendants refused to treat the injuries does not remedy the SAC's insufficiencies.   Therefore, Plaintiff's motion to supplement to include this allegation is DENIED.

Finally, Plaintiff's allegations in the SAC concerning the First Amendment violations do not add any materially different claims to those set forth in his Amended Complaint.  *Compare* ECF No. 59 at 4-5 to ECF No 17 at 23-24.  Because they are already discussed, Plaintiff's motion to supplement to include these allegations is GRANTED to the extent non-material factual details have been added or modified.

## CONCLUSION

For the reasons discussed, Defendants' Motions to Dismiss, ECF Nos. 49, 61, are DENIED IN PART and GRANTED IN PART and Plaintiff's Motion for Supplemental Pleadings ECF No. 59, is DENIED IN PART and GRANTED IN PART.  The allegations related to the claims listed below—which survived the Defendants' prior motion to dismiss—are construed to be included in Plaintiff's SAC, the operative complaint moving forward.

For clarity, the following claims may now proceed to discovery:

1. Deliberate indifference claims against Defendants Graf, Schunk, Bonning, and Williams regarding the failure to replace Pacemaker batteries within 5 years;

2. Deliberate indifference claim against Defendant Sutter regarding the refusal to allow Plaintiff to remain in hospital;

3. Excessive force claims against Defendant Sutter regarding the use of restraints;

4. First Amendment claim against Defendant Olney regarding a diet that complies with Plaintiff's religious beliefs.

22

All other claims are DISMISSED WITH PREJUDICE, as Plaintiff has had three opportunities to

plead the claims and has consistently failed to do so.

      IT IS SO ORDERED.

Dated: October 22, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York